Breezy MAYFIELD *v.*
ARKANSAS DEPARTMENT of HUMAN SERVICES

CA 04–254                                        198 S.W.3d 541

Court of Appeals of Arkansas
Opinion delivered November 17, 2004

*Ben Seay*, for appellant.

*Gray Allen Turner*, for appellee.

*Christina Carr*, attorney ad litem.

Andree Layton Roaf, Judge. Appellant Breezy Mayfield appeals from an order terminating her parental rights to her minor son. On appeal, she argues that the trial court erred in finding by clear and convincing evidence that DHS proved the grounds set forth in the petition for termination. We affirm.

Breezy Mayfield is the mother of B.M., born on January 23, 2002. On October 3, 2002, DHS filed a petition for emergency custody of B.M., based on the presence of unexplained injuries on the child, including a black eye, broken ribs, cigarette burns on the child's back, and bruises on the infant's head. The order granting DHS custody was filed on October 15, 2002. Breezy waived probable cause at a hearing on October 26, 2002, and B.M. was continued in DHS's custody. An adjudication hearing was held on December 17, 2002, however, Breezy did not appear because she had moved to California on the previous day. Breezy is originally from California, had come to Arkansas with her sixteen-year-old boyfriend, and had lived with various relatives while in Arkansas, including a grandmother and aunt. On the morning of the adjudication hearing, Breezy telephoned the DHS worker assigned to the case, explaining that she had permanently moved back to California with her mother because she needed a place to live. Until Breezy moved back to California, she had been exercising regular visitation with B.M. since his removal from her custody. During the adjudication hearing, DHS stated that other than visitation, Breezy had failed to comply with the case plan's requirements that she seek counseling, submit to random drug screens, maintain stable housing, and obtain employment. The trial court found that B.M. was dependent-neglected and continued custody in DHS.

Breezy was present at a March 11, 2003 review hearing. Her attorney had filed a motion to transfer the case to California, citing that Breezy lived in California with her mother; that while in Arkansas, Breezy did not have family or economic support; and that she had no intention of returning to Arkansas, but that she wanted to continue working with California's equivalent of DHS in order to be reunified with her child. Breezy's attorney argued that Breezy was not receiving reunification services in California, and requested that foster care be transferred to California so that

proper visitation and reunification services could be provided to Breezy in California. Both DHS and the guardian ad litem opposed Breezy's motion to transfer.

At the hearing Breezy testified that she moved to California to seek a stable home environment. She stated that she was receiving emotional and financial support from her mother, brother, and sister in California. She testified that she had contacted the equivalent of DHS in California, and that she was advised to have DHS complete an Interstate Compact for the Placement of Children form. She stated that she was advised that there was no way California could complete a home study until that form was completed. Breezy testified that she had been attending parenting classes on her own; that she began counseling; that she was looking for a job; and that she was willing to do whatever necessary to get her child back. Breezy admitted that she did not notify DHS of her intent to move to California, and that she, her mother, brother, and sister all live in the same apartment.

The representative from DHS admitted that it had not completed the "100-A" form, and admitted, "Right now we just have not made an agreement as to what needs to be done. Our ICPC says that we do not have to do the 100-A, and that they're [California] just supposed to provide the services. California says that they won't do it unless we do the 100-A. It's a form that has to be filed." DHS stated that it would not complete the form and that there were no services that it could provide to Breezy in California.

The trial court opined that it was not opposed to transferring the case to California, took Breezy's motion to transfer under advisement, and directed the ICPC officials to appear at the April 7 review hearing to explain what steps need to be taken in order to get the case transferred to California.

ICPC officials did not appear at the April 7 hearing, and instead DHS relied on *Arkansas Department Human Services. v. Huff*, 347 Ark. 553, 65 S.W.3d 880 (2002), for its position that ICPC did not apply in Breezy's case. The trial court declined to send B.M. to California, but agreed to participate in a conference call with the appropriate California judge in order to get the matter resolved.

At the August 12, 2003 review hearing, Breezy submitted letters from various people in California, indicating that she had sought counseling treatment, completed parenting classes, and was

actively seeking employment. Breezy also testified that she had a job "lined up." Reunification was continued as the goal of the case.

On September 9, 2003, a permanency planning hearing was held. DHS recommended termination of Breezy's parental rights, and the trial court authorized DHS to file a petition to terminate. The court found that, based on the history of the case and the fact that services have been available to Breezy, but she had failed to return to Arkansas to take advantage of those services, the goal should be changed from reunification to termination.

At that hearing, Felica Cobb testified that DHS was in favor of terminating Breezy's parental rights; that following termination adoption would be the goal; and that she had not been able to provide services directly to Breezy because of her relocation to California. Cobb stated that a ICPC Regulation home study was done in California at Breezy's mother's home, but that the home was not appropriate for B.M. because of the living conditions. Breezy lives in the home, the apartment is a two bedroom apartment and four people reside there, with Breezy sleeping on the sofa and her mother sleeping in the kitchen, and the carpet was filthy. Cobb also stated that Breezy's mother was taking anti-depressant medication and was not open to supervised visitation. Cobb admitted that, although California was not offering her services, Breezy was "doing some things on her own" such as attending parenting classes and counseling sessions. She admitted to speaking with someone from Yuba County Counseling who indicated that Breezy was "making progress in her counseling sessions." She also admitted that Breezy was currently working.

Breezy also testified that she moved to California to better herself, and that she attempted to seek mental health treatment, but was turned down because she did not have a diagnosis. She stated that she had completed parenting classes, and voluntarily took anger-management classes. She also took co-dependency classes. She testified that she did not move back to Arkansas because she was afraid of failing and did not have any family support or financial support here. At the conclusion of Breezy's testimony, the trial court denied the motion to transfer, and changed the goal to termination.

DHS filed its petition to terminate on September 17, 2003, asserting that it was not in B.M.'s best interest to be returned to Breezy's care and custody, and that he had been out of the home

for more than one year, and despite meaningful efforts by DHS to rehabilitate the home and correct the conditions that caused removal, the conditions had not been remedied. The petition also alleged that Breezy had failed to provide meaningful support. The termination hearing was held on October 14, 2003, and DHS essentially testified to the facts mentioned above. DHS also stated that Breezy had not provided any meaningful support, but admitted that Breezy was not asked to provide child support and did not have the means. DHS admitted that California would not provide services to Breezy because she did not have her child, but stated that it filed a "100-B" form, which California denied.

The trial court granted the petition and found that it was in the child's best interest that Breezy's parental rights be terminated, and that Breezy had provided no meaningful support and had had no meaningful contact with B.M. during the pendency of the case.

■ This court reviews termination of parental rights cases *de novo. Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). Grounds for termination of parental rights must be proven by clear and convincing evidence. *M.T. v. Ark. Dep't of Human Servs.*, 58 Ark. App. 302, 952 S.W.2d 177 (1997). When the burden of proving a disputed fact is by "clear and convincing evidence," the question on appeal is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous, giving due regard to the opportunity of the trial court to judge the credibility of the witnesses. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* Termination of parental rights is an extreme remedy and in derogation of the natural rights of parents, but parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Id.*

The goal of Arkansas Code Annotated section 9-27-341 (Supp. 2003) is to provide permanency in a minor child's life in circumstances in which returning the child to the family home is contrary to the minor's health, safety, or welfare and the evidence demonstrates that a return to the home cannot be accomplished in a reasonable period of time as viewed from the minor child's perspective. Ark. Code Ann. § 9-27-341(a)(3). Parental rights may be terminated if clear and convincing evidence shows that it is in the child's best interest. Ark. Code Ann. § 9-27-341(b)(3). Addi-

tionally, one or more grounds must be shown by clear and convincing evidence. The two grounds alleged in this case are: (1) that the child has been out of the home for more than twelve months and the parent has willfully failed to provide significant material support in accordance with the parent's means or to maintain meaningful contact with the child; and (2) that the child has been out of the home for more than twelve months and despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied. Ark. Code Ann. §§ 9-27-341(b)(3)(i)(a), 9-27-341(b)(3)(B)(ii)(a) (Repl. 2002).

Breezy argues that the trial court's order is erroneous because DHS failed to prove by clear and convincing evidence that she willfully failed to provide significant material support and that she willfully failed to maintain meaningful contact with B.M.

In *Dinkins v. Arkansas Department Human Services*, 344 Ark. 207, 40 S.W.3d 286 (2001), the supreme court held that the trial court erred in finding that the appellant had failed to provide significant material support to her children. The supreme court found that DHS never requested contributions for support from the appellant, and the trial court never ordered the appellant to pay child support. The court held that it was error for the trial court to conclude that the appellant's failure to support constituted an additional ground on which to base the termination of her parental rights. The supreme court, however, ultimately concluded that the error was harmless based on additional grounds supporting termination.

Similarly in *Minton v. Arkansas Department Human Services*, 72 Ark. App. 290, 34 S.W.3d 776 (2000), the court of appeals held that it could not find appreciable evidence that the appellant willfully refused to pay support. The court found that there was no evidence that the appellant willfully refused to pay support. The court found that the evidence did not demonstrate that the appellant had the ability to pay even a nominal amount of support even after she stopped using drugs and obtained regular employment.

Breezy was never ordered to pay child support, and DHS concedes that it never requested support from Breezy. Cobb admitted that Breezy was barely able to feed herself, and as a result DHS never asked her to provide food or clothing for B.M. The trial court's finding that Breezy willfully failed to provide mean-

ingful support is clearly erroneous where she was not ordered to pay child support and had no means to provide support, and where DHS did not request that she provide B.M. with food and clothing. *Dinkins, supra.*

However, with regard to the allegation that Breezy failed to maintain reasonable contact with B.M., it is undisputed that Breezy absented herself by moving to California immediately prior to her adjudication hearing. In short, although she appeared at several review hearings and visited with B.M. at those times, B.M. was removed from Breezy's custody at the age of nine months, and Breezy did not maintain meaningful contact with the child from the time she left the state on December 16, 2002, until her rights were terminated on November 18, 2003.

Arkansas Code Annotated section 9-27-341(b)(3)(B)(ii)(b) provides that to find willful failure to maintain meaningful contact, it must be shown that the parent was not prevented from visiting with the child, taking into account the distance of the child's placement from the parent's home. Here, Breezy voluntarily left and made her home in California, and B.M. was in foster care in Rison, Arkansas. Although Breezy was offered services by Arkansas DHS during the pendency of this case, she refused to return to the state or avail herself of the services. Moreover, while in California, she failed to maintain steady employment, never established her own residence, and moved in and out of her mother's apartment, which in any event was found to be unsuitable in a California home study. We cannot say that the trial court's finding that Breezy failed to maintain meaningful contact with the child is erroneous given the history and circumstances of this case.

Breezy also argues that the trial court erred in finding that DHS made reasonable efforts to provide reunification services to her. As a sub-argument, Breezy argues that DHS failed to make reasonable efforts toward assisting her with obtaining services in California; that DHS opposed her motion to transfer the case to California, and as a result, failed to make reasonable efforts toward complying with the Interstate Compact for the Placement of Children; that there was a misapplication of the holding in *Huff, supra* and essentially that the trial court erred in denying her motion to transfer. DHS argues that Breezy's appeal from the denial of her motion to transfer is untimely, and, alternatively,

argues that DHS made reasonable efforts toward reunification, but that Breezy failed to return to Arkansas to take advantage of those services.

■ Because we affirm the trial court's finding that Breezy willfully failed to maintain contact with the child, we need not address this argument. However, while DHS did not move expeditiously to seek transfer of the case after the February 2003 motion to transfer was filed, the record reflects that DHS ultimately submitted the ICPC form 100-A to California in August 2003, that the ICPC-requested home evaluation was conducted on or about September 4, 2003, at Breezy's mother's home in Yuba County, California; that the home evaluation resulted in the county recommending against an ICPC placement in the grandmother's home because of unsuitability; and that this information was conveyed to DHS prior to the permanency planning hearing. Placement was denied and the Interstate Compact Case formally closed on September 30, 2003. Testimony concerning the failed transfer attempts was presented by DHS at both the permanency planning hearing on September 9, when the trial court finally denied the motion to transfer, and at the termination hearing on October 14. Accordingly, the trial court's findings that Breezy's motion to transfer should be denied and that DHS made reasonable efforts to provide reunification services to her, which she declined to accept, were not in error.

Affirmed.

ROBBINS and BIRD, JJ., agree.