Randel LEWIS *v.*
ARKANSAS DEPARTMENT of HUMAN SERVICES

05-252 217 S.W.3d 788

Supreme Court of Arkansas
Opinion delivered November 17, 2005

244

*Val P. Price*, for appellant.

No response.

JIM GUNTER, Justice. This appeal arises from an order of the Clay County Circuit Court, granting a petition filed by appellee, Arkansas Department of Human Services (DHS), to terminate the parental rights of appellant, Randel Lewis, the father of four minor children, in a dependent-neglect action. Appellant's counsel, Val Price, has filed a motion to withdraw and a no-merit brief, pursuant to *Linker-Flores v. Arkansas Dep't of Human Servs.*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Ark. Sup. Ct. R. 4-3(j)(1). DHS did not file a brief in response. We affirm the circuit court's termination of appellant's parental rights.

In November 2000, DHS opened a protective-services case on appellant's family, including appellant, his wife, Christina, and his three children, A.L., J.L., and A.L., due to environmental neglect and unsanitary living conditions. The three children were ages four and under. When a DHS family-services worker visited the home, scissors and straight pins were found on the floor. Dirty dishes, dirty laundry, and trash were found throughout the house. The nine-month-old child was still sleeping in a bassinet, and the family-services worker had never seen the nine-month-old infant out of the swing or a bassinet. A knife was also found in the yard.

On July 26, 2001, DHS filed a dependency-neglect action because of the deplorable conditions of appellant's home. After a probable-cause hearing was held on August 31, 2001, the circuit court allowed the children to remain in appellant's custody and ordered parenting classes and DHS services. On January 9, 2002, a review of the matter was held, and DHS sought custody of the children. The court appointed an attorney ad litem and allowed DHS to amend its petition to include appellant's newborn child, C.L.

On February 7, 2002, an adjudication hearing was held. Lori Hoggard, a DHS family-services worker, testified that the home was much cleaner at that time. Angela Bradshaw, a speech therapist for the children, testified that she had seen a difference in appellant's children after they were involved in therapy programs.

Christina Lewis, appellant's wife, testified that she tried to maintain the home, and that she did not need any further services from DHS. The circuit court ordered that the children remain in the parents' custody, and DHS was ordered to continue its services. The circuit court ordered an adjudication of dependency-neglect with regard to the youngest child, C.L., for environmental neglect.

In July 2002, all of the children were removed from the home. A probable-cause hearing was held on July 26, 2002, on a petition alleging medical neglect. John Bradshaw, a family-service specialist with DHS, testified that he conducted three child-maltreatment investigations concerning appellant. The first investigation involved environmental neglect, and the second investigation was instigated because appellant was arrested for driving while intoxicated while the children were in the vehicle. The third investigation involved allegations of medical neglect because appellant and his wife did not administer antibiotics for appellant's child, A.L. Mr. Bradshaw testified A.L. had a foot infection that resulted from a toothpick being inside the child's foot for an extended period of six weeks. The antibiotic medication, IV pole, pump, and equipment were found unused in the home. Mr. Bradshaw stated that the children were placed in foster care on July 10, 2002. He further testified that appellant's wife left the home to stay with friends in Paragould.

Ms. Hoggard testified that A.L. was seen by an emergency room doctor after he stepped on the toothpick. According to Ms. Hoggard's testimony, Christina Lewis objected to surgery, but agreed to physical therapy. A.L. was never taken to physical therapy, and the infection in A.L.'s foot caused bone loss. Appellant was incarcerated at the time of the probable-cause hearing because of his DWI charge. The circuit court found that probable cause existed for the emergency order to remain in effect, and ordered that the children remain in foster care. The court ordered appellant and Christina Lewis to maintain a clean house, stable employment, and drug and alcohol treatment.

An adjudication hearing was held on September 12, 2002. DHS recommended that the children remain in foster care with the agency's discretion to place the children with the paternal grandparents once the foster-care training was completed. The parties agreed to the adjudication. A review hearing was then held on February 24, 2003. DHS recommended that the children remain in foster care, that Christina begin parenting classes, and

that appellant complete a multiple offender's class. The circuit court ordered appellant to pay child support of $120.00 per week and Mrs. Lewis to pay $50.00 per week in child support. The goal was reunification with a parent.

On June 27, 2003, a permanency-planning hearing was held. The circuit court returned all four children to appellant's care for a thirty-day trial placement. The protective-services case remained open, and DHS was relieved of providing services to Mrs. Lewis. A six-month review was held on February 20, 2004, and a hearing was held on a motion for change of custody filed by DHS. Appellant wished to relinquish responsibility of the children, and the four children were returned to the custody of DHS. The two oldest children were placed in foster care with the paternal grandfather.

Another permanency-planning hearing was conducted on May 18, 2004. The court ruled that Christina Lewis made no progress toward reunification with the children, as she voluntarily moved to Illinois with her boyfriend and a new child. The court heard testimony from appellant that he had remained sober, gained employment, and acquired a one-bedroom apartment. The circuit court authorized the case plan to be changed to permanent relative placement with termination of parental rights.

On July 20, 2004, a termination hearing was held. On that same day, Christina Lewis filed a consent to the termination of her parental rights, and that consent has not been withdrawn. After the termination hearing, the court terminated appellant's parental rights. On September 10, 2004, the circuit court entered an order terminating appellant's parental rights and granting DHS the power to consent to adoption. Appellant timely filed his notice of appeal on September 16, 2004. On April 26, 2005, appellant's attorney filed a motion to be relieved as counsel and a no-merit brief.

■ This case was certified to us from the court of appeals, pursuant to Ark. Sup. Ct. R. 1-2(b)(3), as this case presents a significant issue that needs clarification under the law. The certification issue is whether appellant's counsel in a no-merit brief must address adverse rulings in all the hearings or solely in the termination hearing. In *Linker-Flores v. Arkansas Dep't of Human Servs.*, 359 Ark. 131, 194 S.W.3d 739 (2004), we considered for the first time whether counsel representing a parent in a termination proceeding should be required to file a no-merit brief re-

quired by an attorney representing a criminal defendant in *Linker-Flores, supra,* where there appears to be no meritorious grounds for appeal. We held:

> Fairness requires that the indigent parent is entitled to a review of the record for any appealable issues, and we will not eliminate this step from the process. . . . Because we conclude that the benefits from the *Anders* protections to the indigent parent's right to counsel outweigh the additional time such procedures require, the *Anders* procedures shall apply in cases of indigent parent appeals from orders terminating parental rights. Thus, we hold that appointed counsel for an indigent parent on a first appeal from an order terminating parental rights may petition this court to withdraw as counsel if, *after a conscientious review of the record,* counsel can find no issue of arguable merit for appeal.

*Id.* at 141, 194 S.W.3d at 747 (emphasis added).

Our holding in *Linker-Flores* comports with Ark. Sup. Ct. R. 4–3(j)(1), which provides in pertinent part:

> A request to withdraw on the ground that the appeal is wholly without merit shall be accompanied by a brief including an abstract and Addendum. The brief shall contain an argument section that consists of a list of all rulings adverse to the defendant made by the circuit court on all objections, motions and requests made by either party with an explanation as to why each adverse ruling is not a meritorious ground for reversal.

Ark. Sup. Ct. R. 4–3(j)(1).

■ Thus, the first question is whether "a list of all rulings adverse to the defendant" under Rule 4–3(j)(1) includes a review of all the hearings in the record or the termination hearing. This question is answered by our appellate rules. Under Ark. R. App. P. – Civil 2(c)(3), when an order results from an adjudication or disposition hearing in a juvenile case where an out-of-home placement has been ordered, such an order is final and appealable. The rule provides in pertinent part:

> (c) Appeals in juvenile cases shall be made in the same time and manner provided for appeals from circuit court.

\* \* \*

(3) In juvenile cases where an out-of-home placement has been ordered, orders resulting from the hearings set below are final, appealable orders:

(A) adjudication and disposition hearings;

(B) review and permanency planning hearings if the court directs entry of a final judgment supported by factual findings that there is no just reason for delay of an appeal, in accordance with Ark. R. Civ. P. 54(b); and

(C) termination of parental rights.

Ark. R. App. P. – Civ. 2(c)(3).

 Under Ark. R. App. P. – Civ. 2(c)(3), any party would have been entitled to appeal prior final orders from the adjudication hearing, review, and permanency-planning hearings. In this case, the parents did not choose to appeal from those final, appealable orders. Thus, we are precluded from reviewing any adverse rulings from these portions of the record. Appellant's attorney, Val Price, stated in his motion to withdraw "[t]hat after reading the entire record, [I have] the opinion that this is a no-merit appeal and [have] filed a no-merit abstract, addendum, and brief pursuant to the law." The record is now before us, and for purposes of appellate review, we apply a *de novo* standard of review. Based upon Ark. R. App. P. – Civ. 2(c)(3), our review of the record for adverse rulings is limited to the termination hearing, and we have determined that there are no errors with respect to rulings on objections or motions prejudicial to the defendant.

██ The second question involves what constitutes a "conscientious review of the record" under *Linker-Flores*. For purposes of reviewing the sufficiency of the evidence in this case, we must examine evidence from all hearings and proceedings in the case, as the circuit court took judicial notice and incorporated by reference into the record all pleadings and testimony in the case that occurred before the termination-of-parental-rights hearings. *See* Ark. Code Ann. § 9-27-341(d)(2). We now review the argument raised by appellant's attorney in his motion to withdraw and a no-merit brief. Appellant's attorney argues that there was clear and convincing evidence that appellant did not comply with the case plan or the orders of the circuit court.

■ Our standard of review in cases involving the termination of parental rights is well established. Arkansas Code Annotated section 9-27-341(b)(3) (Repl. 2002) requires an order terminating parental rights to be based upon clear and convincing evidence. *Camarillo-Cox v. Arkansas Dep't of Human Servs.*, 360 Ark. 340, 201 S.W.3d 391 (2005). Clear and convincing evidence is that degree of proof that will produce in the fact finder a firm conviction as to the allegation sought to be established. *Id.* When the burden of proving a disputed fact is by clear and convincing evidence, the question that must be answered on appeal is whether the trial court's finding that the disputed fact was proven by clear and convincing evidence was clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Gregg v. Arkansas Dep't of Human Servs.*, 58 Ark. App. 337, 952 S.W.2d 183 (1997). Such cases are reviewed *de novo* on appeal. *Wade v. Arkansas Dep't of Human Servs.*, 337 Ark. 353, 990 S.W.2d 509 (1999). However, we do give a high degree of deference to the trial court, as it is in a far superior position to observe the parties before it and judge the credibility of the witnesses. *Dinkins v. Arkansas Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001).

The issue is whether the circuit court erred in finding clear and convincing evidence supported the termination of appellant's parental rights. Appellant's parental rights were terminated pursuant to Ark. Code Ann. § 9-27-341, which states that an order terminating parental rights shall be based upon a finding by clear and convincing evidence (1) that termination is in the best interest of the juvenile after considering the likelihood of adoption and the potential harm, specifically addressing the effect on the health and safety of the child caused by continuing contact with the parent, and (2) that termination is founded based on one or more of the grounds for termination listed in section 9-27-341(b)(3)(B).

■ In cases involving the termination of parental rights, there is a heavy burden placed upon the party seeking to terminate the relationship. *Jones v. Arkansas Dep't of Human Servs.*, 361 Ark. 164, 205 S.W.3d 778 (2005). This is because termination of parental rights is an extreme remedy in derogation of the natural rights of the parents. *Id.* Nevertheless, parental rights will not be enforced to the detriment or destruction of the health and well-

being of the child. *Id.* Thus, parental rights must give way to the best interest of the child when the natural parents seriously fail to provide reasonable care for their minor children. *Id.*

In *Trout v. Ark. Dep't of Human Servs.*, 359 Ark. 283, 197 S.W.3d 486 (2004), we affirmed the trial court's termination of the parental rights of a mother where she had not been stable for a sufficient amount of time to indicate reunification was possible. We held that to give the mother more time to comply would only ignore the fact that she had consistently failed to comply with the court's order. *Id.* In *Camarillo-Cox v. Ark. Dep't of Human Servs.*, 360 Ark. 340, 201 S.W.3d 391 (2005), we affirmed a trial court's termination although the mother had shown significant improvement and had eventually met nearly all of the case-plan requirements, because those improvements were not made until the "eleventh hour" of the case. "[E]vidence that a parent begins to make improvement as termination becomes more imminent will not outweigh other evidence demonstrating a failure to comply and to remedy the situation that caused the children to be removed in the first place." *Id.* at 355, 201 S.W.3d at 401.

With this precedent in mind, we turn to the present case. At trial, the following evidence was presented. First, Linda Dixon, the district court clerk in Piggott, testified that appellant owed $1,565.00 in fines. Appellant was to make payments of $25.00 per week starting in August 2001, but as of the date of the termination hearing, he only made one payment of $25.00 and a $300.00 jail credit. Second, Ray Noel, a human-resources manager for ARI where appellant was employed, testified that appellant's 2003 employment was terminated for attendance reasons, while his 2004 employment was terminated because appellant tested positive for marijuana. Third, Brad Bolar, the jail administrator at Greene County Sheriff's Office, testified that he had booked appellant on numerous occasions for public intoxication, revocation of probation, failure to appeal, nonpayment of fines, hot checks, second-degree criminal mischief, illegal parking, and possession of marijuana. Fourth, Lori Hoggard, a DHS case worker who began working on the case when appellant's children were placed in foster care, testified that the children were removed from the home in July 2002 for medical and environmental neglect. They were returned to appellant in July 2003 after twelve months. Ms. Hoggard also testified that the children were removed again

on February 20, 2004, when appellant was incarcerated for a DWI. She further testified that DHS provided wood for heating, food, transportation, cash assistance, worker visits, SSA services, cleaning services, parenting classes, visitation, case management referrals, and medical services. Ms. Hoggard stated that the children had been in care for a total of seventeen-and-one-half months, and she recommended that the termination of parental rights was in the best interest of the children. Additionally, Liz Fitzgibbons, a DHS adoption specialist, testified that the children were age-appropriate for adoption.

Appellant testified on his own behalf at the termination hearing. On direct examination, appellant testified that he knew DHS was concerned about his housing, employment, drug rehabilitation, child support, and visitation. He admitted that he had not paid any child support. He testified that he lived with his dad and his children before they were removed from his care on February 20, 2002. He further testified that he had a drinking problem and had tried to overdose before going into rehabilitation, but that he cannot go to Alcoholics Anonymous meetings. He further stated that he did not have a job, did not have any income at the time of the termination hearing, and did not have a driver's license.

Based upon this evidence, the circuit court found the applicable grounds were that the children had been adjudicated dependent-neglected and continued out of the custody of the parent for twelve months; that despite meaningful effort by DHS, the father failed to remedy the condition that caused removal; that the father failed to rehabilitate the condition of the home within a reasonable amount of time; and that the father manifested an incapacity and indifference to remedy the conditions causing removal.

 We agree with the circuit court's ruling. Here, there was clear and convincing evidence to support the circuit court's termination of appellant's parental rights. The children were adjudicated dependent-neglected and were out of the home for approximately seventeen months. Appellant lacked stable housing and stable employment. Because appellant was not employed, he lacked the financial ability to provide the day-to-day needs of the children, and he failed to comply with court orders to provide child support. According to Ms. Hoggard's testimony, appellant received an income-tax refund, but he did not pay any fines or child support with the money. She also testified that DHS asked

appellant to leave his father's home after he slapped A.L. in the face. Although appellant completed alcohol and drug inpatient treatment, as well as parenting classes and visitation, he repeatedly failed to comply with the circuit court's orders. Thus, his parental rights must give way to the best interest of the child when he seriously failed to provide reasonable care for his minor children. *See Jones, supra.*

Following the standard we have set out for no-merit briefs in criminal cases, no-merit briefs in termination-of-parental-rights cases "shall include an argument section that consists of a list of all rulings adverse to the defendant made by the circuit court on all objections, motions, and requests made by either party with an explanation as to why each adverse ruling is not a meritorious ground for reversal." *See* Ark. Sup. Ct. R. 4-3(j). In this case, our review of the record reveals four rulings adverse to appellant in the termination hearing that were not abstracted or included in the argument section. Generally speaking, if a no-merit brief fails to address all the adverse rulings, we will send it back for rebriefing. *Brady v. State*, 346 Ark. 298, 57 S.W.3d 691 (2001); *Mitchell v. State*, 327 Ark. 285, 938 S.W.2d 814 (1997). However, as this is our first occasion to address the specific procedures for a termination-of-parental-rights no-merit brief and as the adverse rulings were clearly not meritorious, we decline to order rebriefing so as to avoid any further delay in this case.

The first and second adverse rulings in the termination hearing involved the circuit court's denial of appellant's request to grant a continuance and the circuit court's proceeding with the trial, notwithstanding that appellant was late to the termination hearing. The circuit court announced that appellant had notice of the hearing, and these adverse rulings were cured by appellant arriving late to the hearing.

The third and fourth adverse ruling involved admitting the testimony of Mr. Bolar concerning appellant's criminal convictions and his time served. The circuit court denied appellant's motion to strike the testimony, and the circuit court further overruled an objection to Mr. Bolar's testimony. The circuit court ruled that the testimony "goes to weight rather than admissibility." Here, the circuit court's reliance on appellant's prior convictions and sentences goes to the weight to be given Mr. Bolar's testimony and not its admissibility. Mr. Bolar testified to his

observations as a jail administrator. *See* Ark. R. Evid. 701. Thus, we conclude that the circuit court did not err in admitting this testimony.

■ Based upon the foregoing reasons, as well as our standard of review, we hold that the circuit court did not err in concluding that there was clear and convincing evidence to terminate appellant's parental rights under Ark. Code Ann. § 9-27-341. Accordingly, we grant appellant's attorney's motion to withdraw, and we affirm the circuit court's rulings.

Affirmed.