John POSEY, SR. *v.* ARKANSAS DEPARTMENT of
HEALTH and HUMAN SERVICES; J.P., JR., and J.P.,
Minor Children

06-1274                                              262 S.W.3d 159

Supreme Court of Arkansas
Opinion delivered September 13, 2007

*Therese M. Free*, for appellant.

No response.

ANNABELLE CLINTON IMBER, Justice. The instant appeal arises from an order of the Pulaski County Circuit Court granting Appellee Arkansas Department of Health and Human Service's (ADHHS) petition to terminate Appellant John Posey's parental rights to his children J.P., Jr., and J.P. Posey's counsel, Therese Free, has filed a motion to withdraw as counsel and a no-merit brief, pursuant to our holding in *Linker-Flores v. Ark. Dep't of Human Servs.*, 359 Ark. 131, 194 S.W.3d 739 (2004). Posey filed a list of pro se points on appeal. *See* Ark. Sup. Ct. R. 4-3(j)(2) (2007). ADHHS has not filed a reply brief in the matter.

We assumed jurisdiction over the instant case after the Arkansas Court of Appeals certified the case to this court because it involves a legal principle of major importance that needs clarification. *See* Ark. Sup. Ct. R. 1-2(d) (2007). In 2006, our court promulgated Ark. Sup. Ct. R. 6-9 to specifically address appeals in dependency-neglect cases and to establish an abbreviated time line for filing appeals in those cases. *See* Ark. Sup. Ct. R. 6-9(b)-(f) (2007). Rule 6-9, however, did not address the procedures for no-merit briefs in termination-of-parental-rights cases.

*See* Ark. Sup. Ct. R. 6-9 (2007). Instead, the appellate courts have been referring to the no-merit brief procedures for criminal cases, as set out in Ark. Sup. Ct. R. 4-3(j) (2007), in termination appeals. Under Rule 4-3(j)(3), once the appellant's counsel has filed a no-merit brief and a motion for withdrawal and the appellant has submitted his pro se points on appeal, the clerk of this court must serve the appellant's pro se points upon the Attorney General, who is required to file a reply brief within thirty (30) days. Ark. Sup. Ct. R. 4-3(j)(3) (2007). The court of appeals has asked this court to decide whether ADHHS was required to file a reply brief in this case in the same way that the Attorney General must file a reply in a criminal case, and whether the time for filing the reply brief should be shortened to comply with the condensed appeal schedule in Rule 6-9.

■ We hold that the current rules for no-merit briefs in termination-of-parental-rights cases, *see* Ark. Sup Ct. R. 4-3(j) & 6-9, do not expressly require ADHHS to file a reply brief to a parent's pro se points on appeal. Thus, ADHHS was not required to file a reply brief in the instant case. Accordingly, we will proceed with our review of Posey's case without requesting a reply brief from ADHHS.[1]

### Sufficiency of the Evidence

Our standard of review for cases involving the termination of parental rights is well established. *Lewis v. Ark. Dep't of Human Servs.*, 364 Ark. 243, 217 S.W.3d 788 (2005). Arkansas Code Annotated section 9-27-341(b)(3) (Supp. 2007) requires an order terminating parental rights to be based upon clear and convincing evidence. *See id.* Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Id.* When the burden of proving a disputed fact is by clear and convincing evidence, the question that must be answered on appeal is whether the circuit court's finding was clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and

---

[1] In light of this opinion, we request our Civil Practice Committee and Ad Hoc Committee on Foster Care and Adoption Assessment to review Rule 6-9 and submit recommendations for changes to the rule that would clarify the procedures and timing for no-merit briefs in termination-of-parental-rights cases.

firm conviction that a mistake has been made. *Id.* Such cases are reviewed de novo on appeal. *Id.* This court does, however, give a high deference to the circuit court because that court is in a far superior position to observe the parties before it and to judge the credibility of the witnesses. *Id.*

Appellant Posey is married to Lynette Wilkins, and he is the legal father of his son, J.P., Jr., and the putative father of Wilkins's daughters J.P., N.W., A.J., and S.J.[2] On April 15, 2005, Wilkins left nine-year old J.P., Jr., to watch A.J. while she made a phone call. Upon returning, she noticed that J.P., Jr., had disciplined A.J. by injuring her arm and leaving bruises on her. Wilkins did not take A.J. to the hospital until the next day, at which time she was charged with three counts of child endangerment. A.J., N.W., and J.P., Jr., were taken into ADHHS custody and placed under a seventy-two (72) hour hold. J.P., who had been staying with her paternal grandparents, was removed from her grandparents' home a few days later, and they also were charged with child endangerment. Posey later admitted that J.P. was dependent-neglected due to environmental neglect in his parents' home. At the time the children were taken into ADHHS custody, Posey was in prison.

The circuit court entered a probable-cause order and placed the children in foster care. On June 24, 2005, the children were adjudicated dependent-neglected. As part of the ADHHS case plan for Posey's reunification with his children, the circuit court ordered that, upon his release from prison, Posey contact ADHHS to arrange for regular visitation with the children, complete parenting classes, undergo a drug and alcohol assessment, attend random drug screenings, and undergo a psychological evaluation.

Posey was released from prison in August 2005, and a review order was entered on October 13, 2005. In its order, the circuit court found that Posey had only visited J.P., Jr., and J.P. twice since being released from prison. Posey also had failed to maintain a stable income or housing. The court also found that he had missed his psychological evaluation and had not attended parenting classes. While Posey had attended some random drug screen-

---

[2] There were three other putative fathers for the girls. Because those men failed to comply with the ADHHS case plan, their parental rights were also terminated by the circuit court. Although the termination order dealt with Wilkins's parental rights as to all of the children, Posey's appeal is only from the termination of his rights as to J.P., Jr., and J.P.

ings, he had not completed his drug and alcohol assessment because ADHHS had not applied for the funds to pay for the assessment.

During the permanency planning hearing in April 2006, ADHHS reported that Posey still had not cooperated with ADHHS to complete any of the court-ordered services. He had only submitted to three (3) drug screenings, with one test result being positive for amphetamines. Additionally, in February 2006, Posey pleaded guilty to a felony drug offense and was sentenced to sixty (60) months in the Arkansas Department of Correction, with thirty (30) months suspended. After the hearing, the circuit court changed the permanency plan for J.P., Jr., and J.P. from reunification with their parents to termination of parental rights and adoption.

On July 19, 2006, a termination-of-parental-rights hearing was held, and Wilkins voluntarily surrendered her rights to the children. Posey, however, told the circuit court that he wanted to retain his rights to J.P., Jr., and J.P. and asked for more time to prepare for obtaining custody of the children. He testified that his official release date from prison was in November 2007, but that he anticipated being released by March or April 2007 if he qualified for a special parole program. Thus, he asked the court for another eight to twelve months in order to gain custody of his children.

When asked why he was not in compliance with the ADHHS case plan, Posey admitted that he had not completed his psychological evaluation, parenting classes, or drug and alcohol assessment. He conceded that ADHHS had arranged for a psychological evaluation, but that he simply missed his appointment, which was never rescheduled. Posey, however, blamed his failure to attend parenting classes and to complete a drug and alcohol assessment on ADHHS, stating that ADHHS never arranged dates for him to attend the classes and never obtained funding for his assessment. He further asserted that he only tested positive for amphetamines during his drug screening because of sweat that was transferred from a female to himself. While he admitted to visiting J.P., Jr., and J.P. only twice during the six-month period when he was not in prison, he explained that he had moved to Louisiana and Mississippi to find construction work after Hurricane Katrina and could not return to Arkansas to visit his children.

Janet Norris, the ADHHS case worker, testified that Posey had failed to comply with the case plan for reunification with his children, including the circuit court's order to refrain from using

illegal drugs and to maintain a stable income and housing. She also testified that Posey failed to respond when ADHHS made several attempts to contact him in December 2005. According to Norris, there was a high probability that the children would be adopted because they were of the appropriate age for adoption. She testified that while J.P. had expressed that she loved and missed her mother, J.P., Jr., had indicated that he was ready to be adopted and live like normal kids. In contrast, Norris stated that neither child had expressed any desire to be with Posey. When asked by Posey's counsel whether she knew that Posey had been sending letters to his children from prison, Norris testified that neither child had mentioned receiving any letters.

Next, Monica Spencer, an adoption specialist for ADHHS, testified that the likelihood of the children being adopted was very high. She stated that several families contacted by ADHHS met the criteria or characteristics of the children, and she testified that J.P., Jr., had expressed interest in one family in particular. Spencer also said that she had found matches for families where all four siblings could be placed together.

After the hearing, the circuit court entered an order terminating Posey's parental rights on the ground that Posey had failed to maintain meaningful contact with the children. Upon listing the facts that supported termination, the court concluded that it was clear Posey could not provide for his children and had not had meaningful contact with the children in well over a year, nor had he complied with the ADHHS case plan.

Under Ark. Code Ann. § 9-27-341(b), a circuit court may permanently terminate a parent's rights to his or her children if the court finds by clear and convincing evidence that termination is in the best interests of the children, one ground for termination exists, and there is an appropriate permanency placement plan for the children. When considering whether termination is in the best interest of the children, the circuit court should consider the following factors:

> (i) The likelihood that the juvenile will be adopted if the termination petition is granted; and

> (ii) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent . . . .

Ark. Code Ann. § 9-27-341(b)(3)(A) (Supp. 2007).

■ We conclude that there was clear and convincing evidence that termination of Posey's parental rights was in the best interest of the children in the instant case. First, there was substantial evidence of the strong likelihood that the children would be adopted. The ADHHS case worker testified that the children were the appropriate age for adoption and that the children were looking forward to permanency and stability. Furthermore, an adoption specialist from ADHHS testified that she had located several family matches for the children and there was a possibility that J.P., Jr., and J.P. could be placed in one home along with their other siblings.

■ Second, there was evidence of potential harm to the children if they were placed in Posey's custody. Posey was ordered by the court to submit to random drug screenings and a drug and alcohol assessment, but he failed to finish the assessment, tested positive on a drug screen, and was convicted on a drug charge during the pendency of his children's case. Although Posey tried to justify the positive drug test, we give great deference to the circuit court's observations as to a witness's credibility. *See Lewis v. Ark. Dep't of Human Servs., supra.* Posey also showed an inability to maintain stable housing and income. Finally, his parents, who had been entrusted with the care of J.P., were charged with child endangerment due to environmental neglect, and it was entirely possible that the children could be left with their grandparents again.

The circuit court decided to terminate Posey's rights as to J.P., Jr., and J.P. because the court found that the children were out of his custody for over twelve (12) months and he willfully failed to maintain meaningful contact with the children during that time. *See* Ark. Code Ann. § 9-27-341(b)(3)(B)(ii)(a) (Supp. 2007). In order for a circuit court to find willful failure to maintain meaningful contact, the evidence must show that "the parent was not prevented from visiting or having contact with the juvenile by the juvenile's custodian or any other person, taking into consideration the distance of the juvenile's placement from the parent's home." Ark. Code Ann. § 9-27-341(b)(3)(B)(ii)(b) (Supp. 2007).

In *Mayfield v. Arkansas Department of Human Services.*, 88 Ark. App. 334, 198 S.W.3d 541 (2004), the Arkansas Court of Appeals affirmed a finding that a parent failed to maintain meaningful contact with her child when, during the pendency of the child's case, the parent moved out of state and only visited her child when

she returned to Arkansas for hearings. Similarly, this court affirmed a finding of willful failure to maintain contact when a father discontinued his court ordered visitation for almost six months. *See Crawford v. Ark. Dep't of Human Servs.*, 330 Ark. 152, 951 S.W.2d 310 (1997).

■ In the instant case, Posey was incarcerated for a majority of the time that his children's case was pending, thus preventing him from visiting the children. However, during the six-month period when he was not in prison, Posey only visited his children twice, and, instead of finding a job in Arkansas so as to be near the children and continue with court-ordered visitation, Posey decided to leave the state to seek work. In addition, while Posey allegedly sent letters to his children from prison, the children's case worker testified that the children never mentioned receiving any letters. Again, whether Posey was actually sending letters to his children was a question of witness credibility for the circuit court, and we give great deference to the circuit court judge's decision as to Posey's credibility. *See Lewis v. Ark. Dep't of Human Servs., supra.* Thus, we conclude that there was clear and convincing evidence of Posey's willful failure to maintain meaningful contact with his children.

■ Finally, the circuit court determined that ADHHS had an appropriate permanency placement plan for J.P., Jr., and J.P. — adoption. Evidence of a permanent placement plan exists when ADHHS shows that the department is attempting to clear and prepare a child for permanent placement. *See M.T. v. Ark. Dep't of Human Servs.*, 58 Ark. App. 302, 952 S.W.2d 177 (1997). As stated above, ADHHS presented evidence that the children were at an adoptable age, the children had expressed a desire for stability and permanency, and ADHHS had contacted several family matches meeting the criteria of the children, including a family where all four of the siblings could be placed together. Accordingly, we conclude that there was clear and convincing evidence that ADHHS had developed an appropriate permanency plan for the children.

### Posey's Points on Appeal

Posey raises three pro se arguments on appeal: (1) He was unable to comply with the visitation because he moved out of state to find work; (2) he was unable to complete his psychological evaluation, parenting classes, and drug and alcohol assessment

because ADHHS never supplied the proper funds; and (3) his representation by counsel was inadequate.

■ For his first point of error, Posey asserts that he was unable to visit his children while he was out of prison because he was experiencing financial problems and had to leave the state for work. In *Mayfield v. Arkansas Department of Human Services, supra,* the court of appeals affirmed the decision that a mother willfully failed to maintain contact with her child, even when she moved out of state to seek financial help from family. *See Mayfield v. Ark. Dep't of Human Servs.,* 88 Ark. App. at 336-41, 198 S.W.3d at 543-46. Moreover, it was for the circuit court to determine whether Posey gave credible reasons for not complying with court-ordered visitation. *See Lewis v. Ark. Dep't of Human Servs., supra.*

■ For his second point, Posey asserts that ADHHS's failure to provide appropriate funds prevented his completion of the services in his case plan. This argument is contrary to the evidence presented at the termination hearing. At the hearing, Posey never stated that he could not complete the parenting classes or psychological evaluation due to a lack of funds. Instead, he admitted that he missed his initial appointment for the psychological evaluation and that another evaluation and the parenting classes were never scheduled. Although ADHHS initially did not obtain funding for Posey's drug and alcohol evaluation, ADHHS did acquire the funds while Posey was out of prison and began trying to contact him in December 2005 by sending letters to the address he gave the department. Again, Posey's argument hinges on his credibility as a witness, and when his testimony contradicted that given by the ADHHS representatives, the circuit court judge was entitled to believe whichever witnesses she found more credible. *See Lewis v. Ark. Dep't of Human Servs., supra.* Because we give great deference to the circuit court on credibility issues, we do not find error here.

Finally, Posey argues that his counsel, Therese Free, was inadequate because (1) she wanted him to voluntarily surrender his parental rights; and (2) she did not try to arrange ADHHS services and set up appointments for him. This court has compared a civil appellant's right to counsel in a termination proceeding to that of a criminal defendant's right to counsel. *See Linker-Flores v. Ark. Dep't of Human Servs.,* 359 Ark. 131, 194 S.W.3d 739 (2004). In order to prove ineffective assistance of counsel, a criminal defen-

dant must prove prejudice that resulted to him from counsel's actions. *See Scott v. State*, 351 Ark. 619, 96 S.W.3d 732 (2004).

■ Posey has made no showing of prejudice here. Although Posey alleges that his counsel was inadequate because she did not arrange for ADHHS services, the evidence reveals that several ADHHS services were offered to Posey and it was his own lack of cooperation with ADHHS that caused his failure to complete the services.[3] Throughout the termination hearing, Ms. Free continually asserted Posey's goal of reunification with his children and requested more time for him to complete that goal. Moreover, a review of the hearing transcript reveals that during her questioning of Posey and the ADHHS witnesses, Ms. Free repeatedly attempted to bolster Posey's case. Accordingly, we cannot conclude that Posey's counsel was deficient. For all of the reasons stated above, we find no error in the circuit court's decision to terminate Posey's parental rights to J.P., Jr., and J.P. Accordingly, we affirm the circuit court's decision and grant Ms. Free's motion to withdraw as counsel.

Affirmed.

---

[3] Under Administrative Order 15, section 3, counsel for an indigent parent "shall advocate for specific and appropriate services for the parent to further the client's goals." Ark. Sup. Ct. Admin. Order No. 15, § 3(f) (2007). Thus, while counsel is required to argue before the circuit court for services to be provided to his or her client, it is not counsel's responsibility to schedule the client's appointments to receive services.