2015 Ark. App. 381

**Alma OZUNA, Appellant**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES,**
**Appellee**

**No. CV–15–69**

Court of Appeals of Arkansas,
DIVISION I.

Opinion Delivered June 17, 2015

Leah Lanford, Arkansas Public Defender Commission, Dependency--Neglect Appellate Division, for appellant.

No response.

BART F. VIRDEN, Judge

Alma Ozuna appeals from a Logan County Circuit Court order that terminated her parental rights to her four children.[1] Pursuant to *Linker—Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Rule 6—9(i) of the Rules of the Supreme Court and Court of Appeals, Ozuna's attorney has filed a no-merit brief asserting that there are no issues that would support a meritorious appeal and a motion requesting to be relieved as counsel. The clerk of this court provided Ozuna with a copy of her counsel's motion and brief and notified Ozuna of her right to file pro se points of appeal, which Ozuna has not done. We grant counsel's motion to withdraw and affirm the termination of Ozuna's parental rights.

## I. Background

This case began as a FINS case on June 4, 2013, due to the family's homelessness, and due to educational and medical neglect. At that time, the children, B.R., D.R., Y.R., and J.R. (aged fourteen, thirteen, eleven, and nine, respectively) were removed from the custody of their mother and placed in the custody of the Arkansas Department of Human Services (the Department). The circuit court granted the Department's ex parte request for emergency custody on June 7, 2013. In a probable-cause order filed June 25, 2013, the circuit court found that it was in the best interests of the children to remain in the custody of the Department and ordered Ozuna to participate in parenting classes, counseling, family therapy and to complete a psychological evaluation. The circuit court also ordered that Ozuna maintain a stable home environment and employment. The circuit court ordered the Department to keep the children in the Fort Smith area so they could continue in the same counseling program and to set up visitation with Ozuna. On December 3, 2013, the circuit court entered an order adjudicating the children dependent-neglected, and found that returning the children to the parents would be contrary ·to the welfare

---

1. Father Baltazaar Rivera's parental rights were also terminated in this proceeding, but that termination is not the subject of this appeal.

of the children at that time. The circuit court set the goal as reunification and ordered supervised visitation. It set a review hearing for January 7, 2014.

In the review order, filed the same day as the hearing, the circuit court found that Ozuna had not complied with the case plan and that returning custody to Ozuna was contrary to the welfare of the children. The circuit court ordered Ozuna to submit to random drug screens and a psychological evaluation. A permanency-planning hearing was set for June 3, 2014.

On June 27, 2014, the Department filed a petition calling for the termination of Ozuna's parental rights, and a hearing was held on August 19, 2014. Ozuna testified about the circumstances leading up to the hearing. She explained that she had just had double knee replacement and much prior to surgery she had a serious infection in her knees that required hospitalization. Ozuna testified she also suffers from lupus and fibromyalgia. She explained that her positive drug tests for marijuana, methamphetamine, and amphetamines were redone and came back negative. She testified that part of the reason she had not been able to visit her children was because of the false positive result from the drug test. She confirmed that she had been referred for counseling, psychological evaluation and parenting classes but had been unable to attend since late April due to her physical impairment and residence in the rehabilitation facility, Legacy Health (Legacy). She said she had recently been going to counseling through the Christian Women's Job Corp, and she had not completed parenting classes. Ozuna also testified that she has no transportation, that she was confined to a wheelchair, and that she received $721 per month in social security benefits.

Ozuna also testified she thought the children had "always been fine in [her] care" and that they should never have been taken from her. She testified that they were taken from her because she did not see to it that they were in counseling and that they had missed over ten days of school. She acknowledged that she had been ordered not to leave the jurisdiction, but that she had attempted to move to Texas where they would have a home, rather than continue to be homeless in Arkansas. Concerning the medical neglect, Ozuna explained that she took her daughter off of the medication Vyvanse because her daughter told her that it made her suicidal; however, she had not scheduled a follow-up visit with her daughter's doctor. Ozuna admitted she had attended only five visits with D.R. in eight months, even though she was supposed to have met with her every week. She blamed transportation and her health for her inability to visit her child. Ozuna testified that she was told that the children did not need anything, and so she never sent financial support to them during their time away from her.

Ozuna also testified about B.R.'s sexual abuse. She admitted that B.R.'s paternal uncle sexually abused her on one occasion when he lived with them. Ozuna admitted she allowed him back into their home because he was homeless, and that he tried to abuse B.R. again. Ozuna testified that she called the police when she realized what was happening, and had him arrested.

Stephanie Doherty, an attorney ad litem with the Department testified about the children's progress in the Department's custody and what she had observed of Ozuna's behavior. Doherty testified that each of the four children had issues they were addressing with the help of therapists. She testified Ozuna had visited regularly with her children in the previous year, but that she had not scheduled transportation to have visits with her children

this year. Specifically, she stated that Ozuna had less frequently visited her children from January to April, and then even less so from April to August. Doherty testified that Ozuna missed her parenting classes and that she had never attended counseling. She explained that the Christian Women's Job Corp is mostly a bible-study group, and that they also offer help finding housing. Doherty testified that Ozuna was refusing to participate in physical therapy at Legacy and that the facility administration was trying to find another place for her to go.

Doherty testified that she did not think reunification was possible and that the children were adoptable. She asserted that Ozuna had anxiety and depression, and the purpose of counseling was to address those issues. She testified that Ozuna had a long and difficult history with the Department, beginning in 2008 with the opening of a protective-services case, and that Ozuna had never fully cooperated with the Department.

Sandra Dillon, a therapist for two of the children, also testified at the hearing. She testified that B.R. was doing well in trauma-focused cognitive behavioral therapy that specifically addressed the sexual abuse she had endured.

Sarah Franklin, J.R.'s therapist, stated he was doing well, but that during the last couple of months he had an increase in tantrums and oppositional behavior that could be a hindrance to adoption. She testified that he had begun taking ADHD medication, that he was doing well in school and that he had a good relationship with his foster parents. She testified that J.R.'s prognosis was good and that he would likely work through his problems.

Deborah Cranberry, D.R.'s therapist, testified she was doing very well in the group home and was very adoptable. She described D.R.'s feelings of responsibility for her mom and their strong bond despite her mother's issues.

Sherry Blanton, the social-services director at Legacy, testified that Ozuna had refused to participate in physical therapy and that they were trying to find somewhere else for her to go. Blanton testified that any transportation to parenting classes or visitation could have been arranged through her and that Ozuna never attempted to make those arrangements.

The circuit court entered the order terminating Ozuna's parental rights on October 30, 2014.

## II. *Applicable Law and Standard of Review*

This court reviews all pleadings and testimony in the case on the question of the sufficiency of the evidence supporting the decision to terminate, and only adverse rulings arising at the termination hearing need be addressed in the no-merit appeal from the prior orders in the case. *Lewis v. Ark. Dep't of Human Servs.,* 364 Ark. 243, 217 S.W.3d 788 (2005). Termination-of-parental-rights cases are reviewed de novo. *Dinkins v. Ark. Dep't of Human Servs.,* 344 Ark. 207, 40 S.W.3d 286 (2001). Termination of parental rights is an extreme remedy and in derogation of the natural rights of parents, but parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Id.* In order to terminate parental rights, a circuit court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration the likelihood that the juvenile will be adopted if the termination petition is granted and the potential harm caused by returning the child to the custody of the parent, specifically addressing the effect on the health and safety of the child. Ark.Code Ann.

§ 9–27–341(b)(3)(A)(i) & (ii) (Sup. 2009). Potential harm must be viewed in a forward-looking manner and considered in broad terms. *Dowdy v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 180, 314 S.W.3d 722. The circuit court is not required to find that actual harm would result or to affirmatively identify a potential harm. *Welch v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 798, 378 S.W.3d 290. Each factor need not be proven by clear and convincing evidence, rather it is the overall evidence that must demonstrate clearly and convincingly that termination is in the children's best interest. *McFarland v. Ark. Dep't Human Servs.*, 91 Ark. App. 323, 210 S.W.3d 143 (2005).

Additionally, the circuit court must find by clear and convincing evidence that one or more statutory grounds for termination exists. Ark.Code Ann. § 9–27–341(b)(3)(B). Clear and convincing evidence is that degree of proof that will produce in the finder of fact a firm conviction of the allegation sought to be established. *Meriweather v. Ark. Dep't of Health & Human Servs.*, 98 Ark. App. 328, 255 S.W.3d 505 (2007).When the burden of proving a disputed fact in equity is by clear and convincing evidence, the question that this court must answer on appeal is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Weatherspoon v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 104, 426 S.W.3d 520. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* However, we give a high degree of deference to the circuit court, as it is in a far superior position to observe the parties before it and judge the credibility of the witnesses. *Dinkins, supra.*

Our supreme court has described the procedure for withdrawing as counsel from a termination-of-parental-rights appeal:

[A]ppointed counsel for an indigent parent on a first appeal from an order terminating parental rights may petition this court to withdraw as counsel if, after a conscientious review of the record, counsel can find no issue of arguable merit for appeal. Counsel's petition must be accompanied by a brief discussing any arguably meritorious issue for appeal. The indigent party must be provided with a copy of the brief and notified of his right to file points for reversal within thirty days. If this court determines, after a full examination of the record, that the appeal is frivolous, the court may grant counsel's motion and dismiss the appeal.

*Linker–Flores*, 359 Ark. at 141, 194 S.W.3d at 747–48.

### III. *Best–Interest Analysis*

The circuit court found by clear and convincing evidence that it was in the children's best interest to terminate Ozuna's parental rights. Specifically, the circuit court found that the children were adoptable and that there was potential harm to the safety and welfare of the children if they were returned to their mother's custody. The circuit court found that the juveniles were dependent/neglected, that they had been out of the custody of the parents for more than twelve months, and that despite meaningful efforts by the Department to rehabilitate Ozuna and correct the conditions that caused the removal, those conditions had not be remedied. Specifically, the circuit court found that the services offered included individual counseling, psychological evaluation, inpatient drug treatment, transportation, random drug screening,

visitation, parenting classes, case management, and medical treatment.

There was sufficient evidence to show potential harm to the children if they were returned to their mother's custody. The court found that other factors subsequent to the filing of the original petition for dependency/neglect demonstrated that return of the children to Ozuna was contrary to their welfare, and despite meaningful efforts by the Department, Ozuna had manifested the incapacity or indifference to remedy the subsequent issues that prevented the children's return. The specific issues that the court found had arisen were as follows: Ozuna did not complete parenting classes, she had not gained stable housing or employment, Ozuna had not regularly visited or maintained regular contact with the children, she had not participated in counseling as recommended, she had not submitted to a psychological evaluation, she had not submitted to random drug screens, and she had not maintained consistent contact with the Department.[2]

### IV. *Other Grounds for Termination*

Aggravated circumstances are present when "[a] juvenile has been abandoned ... or a determination has been or is made by a judge that there is little likelihood that services to the family will result in successful reunification." Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(rt)(3)(B)(i) (Supp. 2013). The circuit court found aggravated circumstances. Specifically, the circuit court found that there would be little likelihood that continued services would result in successful reunification because Ozuna had

demonstrated no capacity or intention of complying with the case plan despite the Department's efforts to offer meaningful services, including transportation, and had abandoned the children. In light of the testimony presented at the termination hearing, we hold that the circuit court's order terminating Ozuna's parental rights was not clearly erroneous, and we affirm.

There were no other adverse rulings other than the termination itself.

From our review of the record and the brief presented to us, we find that counsel has complied with Rule 6-9(i), and we hold that the appeal is wholly without merit. Consequently, we grant counsel's motion to withdraw and affirm the order terminating Ozuna's parental rights.

Affirmed; and motion to withdraw granted.

Gladwin, C.J., and Hixson, J., agree.

---

2. The circuit court also found that Ozuna had tested positive for drugs, but that test was later found to be a false positive. In its order, the circuit court found drug abuse as a grounds for terminating her parental rights.

The discredited positive drug test and the circuit court's finding of drug abuse were not given any weight in this appeal and are not addressed in this opinion.