Dawn SOWELL and Terry Sowell  *v.*
ARKANSAS DEPARTMENT of HUMAN SERVICES

CA 05-1137                                    241 S.W.3d 767

Court of Appeals of Arkansas
Opinion delivered October 25, 2006

*Glen Hoggard*, for appellants.

*Martha O. Carder*, Attorney Ad Litem.

*Gray Allen Turner*, Dep't of Human Services, Office of Chief Counsel, for appellee.

JOHN MAUZY PITTMAN, Chief Judge. This is an appeal from an order terminating appellants' parental rights to their two children. Appellants argue that the trial court erred in finding grounds for termination of parental rights at the adjudication hearing conducted January 4 and 5, 2005, prior to the termination hearing being held and without notice to the appellants that a termination hearing would be conducted. They also argue that the evidence was insufficient to support the findings that appellants failed to remedy the conditions causing removal and that the Arkansas Department of Human Services made a meaningful effort to provide them with appropriate services. We affirm.

Appellants' argument that the trial court erred in finding grounds for termination of parental rights at the adjudication hearing without notice to the appellants that a termination hearing would be conducted is not preserved for appeal because appellant filed no notice of appeal from the adjudication order. Arkansas Rules of Appellate Procedure – Civil 2(c)(3)(A) expressly provides that adjudication hearings in juvenile cases are final, appealable orders. Appellants failure to file a timely notice of appeal deprives this court of jurisdiction to consider the issues raised in that order. *See Arkansas Department of Human Services v. Dix*, 94 Ark. App. 139, 227 S.W.3d 456 (2006); *see also Jefferson v. Arkansas Department of Human Services*, 356 Ark. 647, 158 S.W.3d 129 (2004); *Hawkins v. State Farm Fire and Casualty Co.*, 302 Ark. 582, 792 S.W.2d 307 (1990); *Moore v. Arkansas Department of Human Services*, 69 Ark. App. 1, 9 S.W.3d 531 (2000).

Appellants' remaining arguments challenge the sufficiency of the evidence to support the termination of their parental rights.

Although termination of parental rights is an extreme remedy and in derogation of the natural rights of parents, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Jefferson v. Arkansas Department of Human Services, supra.* Grounds for termination of parental rights must be proven by clear and convincing evidence. *Carroll v. Arkansas Department of Human Services,* 85 Ark. App. 255, 148 S.W.3d 780 (2004). When the burden of proving a disputed fact is by "clear and convincing evidence," the question on appeal is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous, giving due regard to the opportunity of the trial court to judge the credibility of the witnesses. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Dinkins v. Arkansas Department of Human Services,* 344 Ark. 207, 40 S.W.3d 286 (2001).

Pursuant to Ark. Code Ann. § 9-27-341(a) (Repl. 2002), an order terminating parental rights must be based on a finding that termination would be in the best interest of the juvenile pursuant to enumerated grounds, including a finding that the child has been adjudicated dependent-neglected and, despite meaningful effort by ADHS to rehabilitate the home and rectify the conditions causing removal, the parent has failed to remedy the conditions. Noting that the child had been removed four times in the course of two years, the trial court found that there was little likelihood of successful reunification because the condition in the home had not improved in two years despite meaningful efforts by ADHS to rehabilitate the home, including provision of appropriate services.

The oldest child, T.S., was six months old when this case was opened in January 2003 because of environmental neglect. Danielle Sims, a family services worker with ADHS, testified that appellants' home was in utter disarray with trash in the living room and dirty clothes, bottles, and dishes everywhere. The parents smoked in the home and there were three or four ashtrays full of cigarette butts located in various places in the house. Ms. Sims, noticing that T.S. breathed with a gurgling, rasping sound, directed appellants not to smoke in the house. Although T.S. had been medically diagnosed with Respiratory Syncytial Virus and had been prescribed Proventil and Albuterol, and the parents had

been repeatedly directed by Conway Children's Clinic to discontinue smoking in the home, they continued to do so for the duration of the case.

T.S. had also been diagnosed with failure to thrive and, given his diagnosis and the failure of appellants to comply with directions to keep the home clean, safe, and smoke-free, he was taken into ADHS custody. Services, including numerous in-home lessons in housekeeping and parenting, were provided to appellants by ADHS. T.S. was returned to his parents in September 2003 but was again removed pursuant to a motion for emergency change of custody filed by ADHS only one month later. The reason for the emergency removal was that T.S.'s primary care physician reported that she had given appellants specific feeding instructions but, during the month in appellants' custody, his weight had fallen below the fifth percentile. T.S. was hospitalized for failure to thrive and gained almost one pound during the first night of hospitalization. Because T.S. had gained weight in foster care and lost weight in appellants' care, the trial judge ordered T.S. to be returned to foster care. A new baby born in December, V.S., was added to the case but remained in the home. During this time, appellants were provided with more intensive services, including a check-list to keep track of necessary child care and household chores.

T.S. was returned to the home in April 2004 under intensive supervision by ADHS. It became clear that appellants would only comply when they were under strict and frequent supervision, and that the smoking in the home remained a concern. At a review hearing in June 2004, it was reported that the condition of the home was somewhat improved but that there were still piles of things scattered everywhere, and the odor of smoke in the home continued to be strong enough to cause an ADHS worker to have an allergic reaction.

A petition for emergency change of custody filed by ADHS resulted in an adjudication hearing for V.S. There was testimony from a licensed practical nurse at the day school attended by T.S. that T.S. regularly reeked of cigarette smoke, that he frequently had head lice, and that he came to school in so unhygienic a state that the administrator took the unusual step of bathing him at school after contacting the parents produced no improvement. An occupational therapist at the school testified that T.S. arrived at school in October 2004 smelling of cigarette smoke, coughing horribly, and unable to catch his breath. Even after the school

nurse gave T.S. his inhaler, he could not stop crying and coughing. She testified that T.S. was much improved when he was placed in foster care. He no longer needed his inhaler at all and no longer had a runny nose or head lice.

The record contains many more similar examples; suffice it to say that removal of the children in this case was occasioned by environmental neglect, and there was abundant proof to show that this situation had not appreciably changed despite two years of intensive effort by ADHS, including room-to-room cleaning instructions for Mrs. Sowell and one-on-one lessons to show her how to bathe a child. On this record, we cannot say that the evidence is insufficient to support the finding that appellants failed to remedy the conditions causing removal.

Appellants also argue that the services offered by ADHS were not meaningful because Mrs. Sowell was disabled by virtue of her borderline mental retardation and therefore entitled to special services under the Americans with Disabilities Act. This argument is without merit because Mrs. Sowell has not demonstrated that she is disabled. To come within the purview of the Americans with Disabilities Act, Mrs. Sowell must demonstrate that she has a mental impairment that substantially limits one or more of her major life activities 42 U.S.C. § 12102(2); *see Ruble v. Arkansas Department of Human Services*, 75 Ark. App. 321, 57 S.W.3d 233 (2001). However, Lewis Campbell, a psychological examiner, testified that he conducted a psychological evaluation of Mrs. Sowell and found nothing to indicate that she was incapable of performing the basic tasks of dressing, cleaning, and bathing that were required of her, and that her only mental diagnosis was mild mental retardation. Given this evidence and the evidence that Mrs. Sowell, by intermittent compliance, did in fact demonstrate that she had learned and was capable of satisfactorily performing the tasks at issue, we do not think it can be said that she was disabled as defined by the Act or that the services offered were not adequate.

Affirmed.

BIRD and NEAL, JJ., agree.