2010 Ark. App. 416

**Michelle REED, Appellant**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES and Minor Child, Appellees.**

**No. CA 10–12.**

Court of Appeals of Arkansas.

May 12, 2010.

Deborah Ruth Sallings, Arkansas Public Defender Commission, Little Rock, AR, for appellant.

Tabitha Baertels McNulty, Little Rock, AR, for appellee.

M. MICHAEL KINARD, Judge.

Michelle Reed appeals from the order terminating her parental rights to her son D.P., born February 4, 2008. She challenges the sufficiency of the evidence regarding the trial court's finding that termination was in D.P.'s best interest. We affirm.

The Arkansas Department of Human Services (DHS) exercised a seventy-two-hour hold on D.P. in August 2008, when appellant was arrested for failure to appear on a forgery charge, failure to appear for driving on a suspended license, and possession of marijuana. D.P. was taken into DHS custody due to there being no legal caretaker.[1] The court entered an order for emergency custody that same day, finding probable cause to believe that D.P. was dependent-neglected and that his immediate removal from the present custodian was necessary to protect his health and safety. A probable-cause hearing was held on August 13, 2008, and the court filed an order on August 28, 2008. The court found that appellant was incarcerated on failure-to-appear and drug charges and had "unresolved drug issues." Appellant was given supervised visitation to take place after her release. She was ordered to cooperate with DHS; keep DHS informed of her residence and any change in residence; refrain from use of alcohol or illegal drugs; obtain and maintain stable housing and employment adequate for herself and D.P.; maintain a clean, safe home; demonstrate the ability to protect D.P. and keep him safe from harm; maintain contact with her attorney; and follow court orders, which included an order to contact her DHS caseworker as soon as she was released from jail.

An adjudication hearing was held on October 2, 2008. At that time, the court found that D.P. was dependent-neglected as a result of appellant's neglect and parental unfitness. The court noted that appellant was incarcerated at that time and that there was a DHS history, with appellant having had her three other children removed. The goal of the case was set as reunification. Appellant was given supervised weekly visitation upon her release, and the court ordered her to submit to random drug tests and pay $25 per week in child support upon her release. Appellant was further ordered to complete twelve hours of parenting classes by December 30, 2008, and submit proof of completion to her caseworker. Previous requirements were reiterated.

1. D.P.'s father, Fabian Perales, had his parental rights terminated by an order filed on September 4, 2009, but he is not a party to this appeal. At the time D.P. was taken into DHS custody, Perales had not yet been recognized as D.P.'s legal father.

A review hearing was held on March 11, 2009, and the resulting order noted that appellant was still incarcerated and had not completed twelve hours of parenting classes as ordered. The court ordered DHS to transport D.P. to visit appellant where she was incarcerated one time per month in March, April, and May. On April 3, 2009, DHS filed a motion to terminate reunification services. The grounds for recommending that no reunification services be provided were that (1) there was little likelihood that services to the family would result in successful reunification and (2) appellant had her parental rights involuntarily terminated as to a sibling of the juvenile. At the May 13, 2009 permanency-planning hearing, the court found that there was little likelihood that services to the family would result in successful reunification and that appellant had previously had her parental rights terminated in three other children, and the court relieved DHS of the responsibility of providing reunification services. A permanency-planning order filed May 22, 2009 (but apparently dating back to May 13), changed the goal of the case to adoption, but continued visitation and orders requiring attendance at NA/AA meetings, child support, and other requirements.

DHS filed a petition for termination of parental rights on June 4, 2009. An August 4, 2009 review order noted that appellant remained incarcerated. The court found that appellant had made minimal progress toward alleviating or mitigating the causes of the removal and completing the court orders and case plan; specifically, the court found that appellant had completed parenting classes and group counseling while in jail, but did not have a job or suitable home, nor had she demonstrated that she could properly care for D.P.

The termination hearing was held on September 30, 2009. Jennifer Reed, the foster care supervisor for DHS in Washington County, testified at the hearing. She testified that DHS did not have documentation regarding appellant's completion of parenting classes, and appellant had not paid child support or attended AA/NA meetings since her release. She stated that D.P. was doing very well in his placement and was likely to be adopted if the termination petition were granted. Appellant also testified, and she requested more time to become stable. She stated that she was released from the Arkansas Department of Correction on August 31, 2009, but was then incarcerated in Benton County until September 2, 2009, for failure to pay fines. Appellant testified that she was currently living with a family friend, working through a temporary service, and did not have a vehicle, although her sister was helping her with transportation. She stated that she was on parole for one year and acknowledged that she would go back to jail if she violated her parole.

In ruling from the bench, the trial court reviewed the case history. The court concluded that D.P. could not be returned to appellant's care within a time frame that was reasonable from the juvenile's perspective. In its written order, which incorporated its previous bench rulings, the trial court found that appellant failed to demonstrate the ability to care for her son or maintain stability. The court found that the reasons D.P. was taken into care—appellant's arrests and drug use—had not been remedied. The court terminated appellant's parental rights to D.P. in an order filed October 9, 2009.

Termination of parental rights is an extreme remedy and in derogation of the natural rights of parents, but parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Sowell v. Ark. Dep't of Human Servs.*, 96 Ark. App. 325, 241

S.W.3d 767 (2006). Pursuant to Arkansas Code Annotated section 9–27–341(b)(3)(A)(i) and (ii) (Repl.2009), an order terminating parental rights must be based on a finding that termination is in the child's best interest, which includes consideration of the likelihood that the juvenile will be adopted and the potential harm caused by returning custody of the child to the parents. In addition, the proof must establish at least one of several statutory grounds. Ark.Code Ann. § 9–27–341(b)(3)(B). One of those grounds is that the juvenile has been adjudicated by the court to be dependent-neglected and has continued out of the custody of the parent for twelve months and, despite a meaningful effort by the department to rehabilitate the parents and correct the conditions that caused removal, those conditions have not been remedied by the parent. Ark.Code Ann. § 9–27–341(b)(3)(B)(i)(*a*). Another ground is that the juvenile has lived outside the home of the parent for a period of twelve months, and the parent has willfully failed to provide significant material support in accordance with the parent's means or to maintain meaningful contact with the juvenile. Ark.Code Ann. § 9–27–341(b)(3)(B)(ii)(*a*). Another ground is that other factors arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that returning custody to the parent is contrary to the juvenile's health, safety, and welfare and that, despite an offer of appropriate services, the parent has manifested the incapacity or indifference to remedy the subsequent factors. Ark.Code Ann. § 9–27–341(b)(3)(B)(vii)(*a*). Yet another ground is that the parent has been found by a court of competent jurisdiction to have had his or her parental rights involuntarily terminated as to a sibling of the child. Ark. Code Ann. § 9–27–341(b)(3)(B)(ix)(*a*)(4).

The facts warranting termination of parental rights must be proven by clear and convincing evidence. Ark.Code Ann. § 9–27–341(b)(3). When the burden of proving a disputed fact is by clear and convincing evidence, the question that must be answered on appeal is whether the trial court's finding is clearly erroneous. *Lewis v. Ark. Dep't of Human Servs.*, 364 Ark. 243, 217 S.W.3d 788 (2005). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Yarborough v. Ark. Dep't of Human Servs.*, 96 Ark. App. 247, 240 S.W.3d 626 (2006). We give a high degree of deference to the trial court, as it is in a far superior position to observe the parties before it and judge the credibility of the witnesses. *Lewis, supra.*

Appellant argues that the evidence that termination was in D.P.'s best interest was insufficient. Specifically, she argues that there was insufficient evidence of both D.P.'s adoptability and of the potential harm of returning D.P. to her custody. As to adoptability, the DHS caseworker's supervisor testified that seventeen-month-old D.P. was likely to be adopted. While appellant argues that this witness had little personal contact with the case and that she stated no basis for her belief, we hold that the evidence was sufficient under the facts of this case. *See Cobbs v. Ark. Dep't of Human Servs.*, 87 Ark. App. 188, 189 S.W.3d 487 (2004) (finding sufficient the caseworker's testimony that, although the children had issues to work through, both were adoptable). In fact, there is absolutely no reason to believe D.P. would not be adopted. As to the potential harm factor, the court addressed the potential harm D.P. faced due to lack of stability in not having a permanent home. This court

has noted that, in considering the best interest of the child, there is no requirement that every factor considered be established by clear and convincing evidence; rather, after consideration of all factors, the evidence must be clear and convincing that the termination is in the best interest of the child. *McFarland v. Ark. Dep't of Human Servs.*, 91 Ark. App. 323, 327, 210 S.W.3d 143, 147 (2005). We find that the cases cited by appellant, *Conn v. Ark. Dep't of Human Servs.*, 79 Ark. App. 195, 85 S.W.3d 558 (2002), and *Haynes v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 28, 2010 WL 135194, are distinguishable. In this case, there was evidence (in the form of the DHS supervisor's testimony) presented of the juvenile's adoptability and evidence from which the court could make a potential-harm finding.

After reviewing this case under the proper standards, we hold that the trial court's findings are not clearly erroneous.

⌊₈Affirmed.

ROBBINS and MARSHALL, JJ., agree.