

# ARKANSAS COURT OF APPEALS

DIVISION I

**No.** CV–16–401

| | |
|---|---|
| NIKKI LANSDELL | **Opinion Delivered:** September 28, 2016 |
| APPELLANT | APPEAL FROM THE MADISON COUNTY CIRCUIT COURT [NO. JV 2015-005-3] |
| V. | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND T.M., MINOR CHILD | |
| APPELLEES | HONORABLE STACEY ZIMMERMAN, JUDGE |
| | AFFIRMED |

## RAYMOND R. ABRAMSON, Judge

Nikki Lansdell appeals from the permanency-planning order placing permanent custody of her daughter, T.M., with the child's paternal grandparents and awarding Nikki visitation. On appeal, Nikki argues that the evidence is insufficient to support the circuit court's decision to not apply statutory permanency-planning goal one, two, or three from Arkansas Code Annotated section 9-27-338 (Repl. 2015). We affirm.

On February 8, 2015, the Arkansas Department of Human Services ("DHS") exercised an emergency hold over T.M. after Nikki had been arrested for possession of drug paraphernalia with the intent to manufacture methamphetamine, use of a communication device to facilitate drug activity, criminal use of property, and unlawful entry of contaminated property.[1] The charges were related to an active meth lab at Nikki's residence.

---

[1] Nikki's son from a previous marriage, J.G., was also removed from the home. However, the court later placed J.G. in his father's custody, and he is not a party to this appeal.

Nikki lived in the residence with her husband, Vaughn Lansdell, and T.M. At the time of her arrest, Nikki tested positive for methamphetamine, amphetamines, benzodiazepines, opiates, oxycodone, and marijuana. T.M.'s father, Matthew McCoy, had supervised visitation with T.M. pursuant to a divorce decree.

On February 13, 2015, the court found probable cause for the emergency custody as a result of Nikki's drug use, her criminal charges, and the domestic violence in the home. The court noted that Nikki was in jail. Upon her release, the court ordered her to participate in individual counseling; refrain from using drugs and alcohol; submit to a drug-and-alcohol assessment; follow the recommendation from the assessment; submit to weekly random drug screens; obtain and maintain stable housing and employment; resolve all criminal charges; and demonstrate the ability to protect T.M. and keep her safe from harm. As a result of the domestic violence, the court also ordered that Vaughn have no contact with T.M. The court placed T.M. with her paternal grandparents, Theresa and Mike McCoy.

On March 6, 2015, the court adjudicated T.M. dependent-neglected. The court noted that Nikki remained in jail but continued its orders from the probable-cause hearing. The court also set the goal of the case as reunification and ordered that Nikki have supervised visitation with T.M. upon her release from jail.

On July 31, 2015, the court held a review hearing. The court found that Nikki was in partial compliance with the case. Specifically, the court found that she had not maintained contact with DHS or obtained stable housing. The court further noted that Nikki's criminal charges were still pending. The court found that Nikki had completed the drug-and-alcohol

2

assessment, had taken parenting classes, and had attended two counseling sessions. The court authorized Vaughn to participate in counseling with T.M. upon approval by the counselor.

On November 6, 2015, the court held a permanency-planning hearing. At the hearing, Antoinette Johnson, the DHS caseworker, recommended that the court permanently place T.M. with her paternal grandparents, Theresa and Mike McCoy. Johnson testified that T.M. was doing well in the McCoys' home, and she questioned Nikki's stability. She recognized that Nikki had an apartment in Fayetteville with her husband Vaughn but feared the residence was only temporary. She explained that Nikki had moved from residence to residence in the past and that her criminal charges were still pending. She also voiced concerns about T.M.'s emotional state and noted that Vaughn had an extensive criminal history that included violent crimes and pending criminal charges.

Theresa McCoy testified that T.M. had acclimated well to her home and that she wanted T.M. to remain there. She noted that T.M. has glaucoma and that she puts eye drops in every night. She explained that T.M. had an appointment with a pediatric ophthalmologist in Little Rock in February to better diagnose the problem. She testified that she had been supervising T.M.'s visits with Nikki and that the visits had gone well. She discussed one occasion where Nikki and her ex-husband had a verbal altercation,[2] but she noted that Nikki had been appropriate in T.M.'s presence. Matthew McCoy, T.M.'s father, testified that he wanted his daughter to live with his parents.

Nikki testified that she wanted T.M. to return to her home. She denied that Vaughn had a history of violence and further denied that he had pending criminal charges. She stated

---

[2]The altercation occurred with J.G.'s father, Robert Vangundy.

that he was on probation for a drug-paraphernalia charge. She stated that T.M. is not afraid of Vaughn and that T.M. wanted to see him. Nikki testified that she is participating in the drug-court program for the charges that led to T.M.'s removal. She also stated that she had a permanent job at Southeast Poultry in Rogers and had been employed there since June 5.

Vaughn testified that he lives with Nikki and also works at Southeast Poultry. He noted that he has a son, W.L., who had been removed from his custody. He stated that he is involved in W.L.'s custody proceedings. He explained that he had been convicted of drug charges in Madison County in October 2015 and that he had received three years' probation. He also stated that he had been convicted in 2006 for drug charges. Following Vaughn's testimony, the court continued the case until January 22, 2016, because T.M.'s counselor, Diane Shott, could not attend the hearing.

Prior to the second hearing, on January 20, 2016, DHS filed a report again recommending that T.M. be permanently placed with the McCoys. The report noted that since the November 6, 2015 hearing, Nikki had been arrested twice during altercations with Vaughn. Specifically, on November 13, 2015, Nikki and Vaughn had an altercation at work, and on December 31, 2015, they had an altercation in Fayetteville. The report noted that after Nikki's release from the Washington County Detention Center on January 1, 2016, officers transported her to Boone County on charges from Alpena City.

The court proceeded with the second portion of the permanency-planning hearing on January 22, 2016. At the second hearing, Johnson again recommended that the court permanently place T.M. with the McCoys. She explained that since the last hearing, Nikki had maintained her job, housing, and sobriety; however, she recommended that T.M. not

be placed with Nikki because of her relationship with Vaughn. She explained that Nikki and Vaughn had engaged in violent altercations since the case had been opened and she did not believe that Nikki had demonstrated a genuine investment in T.M. She noted that Nikki had filed for protection orders against Vaughn in the past and had threatened to leave him but she had not followed through.

Diane Shott testified that she had counseled T.M. for several months and that T.M. had made substantial progress. She testified that initially, T.M. was very afraid and struggled with behavioral and anger issues. Specifically, Shott noted that T.M. was afraid of Vaughn. Shott was not concerned with Nikki's having custody of T.M.; however, she was concerned with T.M.'s living with Vaughn. She explained that Vaughn had only participated in the counseling sessions only via telephone. Shott did not offer a recommendation on T.M.'s placement but stated that T.M. should "be in the safest place possible with consistency."

Nikki testified that since the last hearing, she and Vaughn had legally separated and that she planned to file for a divorce in February. She explained that Vaughn had been charged with aggravated assault against her, which led to their separation. She noted that a court had issued a no-contact order as a result of the assault, but she had seen him on one occasion despite the order. She stated that the second altercation occurred between other people, not her and Vaughn; she just happened to be there. She recognized that she had returned to Vaughn in the past but stated she would not return to him on this occasion. She noted that he was no longer named on the lease to her apartment.

Nikki testified that she had been participating in the drug-court program and had tested negative on all drug tests. She stated that if she maintained her success, she would

complete the program in nine months. She explained that she had been arrested on January 1, 2016, for failing to register her vehicle. She admitted knowing about the warrant but mistakenly believed that the charge had been consolidated with her drug charges. She recognized that she had made mistakes in the past, and she thanked the McCoys for taking care of T.M.

Teresa Driver, Nikki's counselor, testified that Nikki had made great progress in counseling and that she trusted Nikki. She stated that Nikki had completed "everything that [has] been asked of her." She believed that Nikki had ended her relationship with Vaughn.

Following Driver's testimony, the court orally ruled that it was in the best interest of T.M. to permanently place her with the McCoys. The court entered a written permanency-planning order on February 22, 2016, reflecting its oral pronouncement. In the written order, the court specifically found that Nikki had "not made measurable, sustainable, and significant progress toward the case plan goal of reunification." The court noted,

> [Nikki] has made some progress toward alleviating or mitigating the causes of removal and completing the Court orders and the case plan. Specifically, [Nikki] has addressed her substance abuse issues. However, [T.M.] was removed from [Nikki]'s custody due to [her] drug use and [Nikki] being arrested. [Nikki] was arrested as recently as January 1, 2016. As such, [Nikki] has not remedied that condition of removal. Additionally, [Nikki] has failed to demonstrate an ability to protect [T.M.] and keep her safe from harm, as evidenced by [Nikki]'s continuing relationship with Vaughn. Though [Nikki] testified today that she plans to divorce [Vaughn,] Nikki remains married to [Vaughn] today. [Vaughn] is violent and dangerous. [Nikki] has not demonstrated that [Vaughn] is out of her life such that [t]his Court can be confident that [T.M.] would be safe if [T.M.] were returned to [Nikki]'s custody today.

The court awarded Nikki supervised visitation for four hours per week and gave the McCoys discretion to increase the visits as Nikki made further progress.

SLIP OPINION

Nikki timely appealed the permanency-planning order to this court. On appeal, she argues that the evidence is insufficient to support the circuit court's decision to award permanent custody to the McCoys. Specifically, she asserts that the court should have applied statutory permanency-planning goal one, two, or three at the hearing. She points out that she had substantially complied with the case plan, had maintained her sobriety throughout the proceedings, had been compliant with the drug-court requirements, and had separated from Vaughn.

We review findings in dependency-neglect proceedings de novo, but we will not reverse the circuit court's findings unless they are clearly erroneous. *Contreras v. Ark. Dep't of Human Servs.*, 2014 Ark. 51, 431 S.W.3d 297 (citing *Lamontagne v. Ark. Dep't of Human Servs.*, 2010 Ark. 190, 366 S.W.3d 351). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, based on the entire evidence, is left with a definite and firm conviction that a mistake has been committed. *Id.* Furthermore, this court defers to the circuit court's evaluation of the credibility of witnesses. *Id.*, 431 S.W.3d at 300.

Arkansas Code Annotated section 9-27-338 lists the permanency goals that a circuit court can consider at the permanency-planning stage of dependency-neglect cases. The goals are listed "in order of preference," and the court must select a goal based on the best interest, health, and safety of the juvenile. Ark. Code Ann. § 9-27-338(c).

The first goal is placement of the juvenile with a fit parent. Ark. Code Ann. § 9-27-338(c)(1). The second goal is to return the juvenile to the guardian or custodian from whom the juvenile was initially removed. Ark. Code Ann. § 9-27-338(c)(2). The third goal allows the court to authorize a plan to place custody of the child with a parent if (1) the parent is

complying with the case plan and making measurable progress; (2) the parent is making significant progress toward remedying the conditions that caused removal or that prohibited the placement of the juvenile in her home; and (3) the return of the juvenile will occur within three months. Ark. Code Ann. § 9-27-338(c)(3)(A)–(B); *Ragsdale v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 159. For the third goal, the burden is "on the parent to demonstrate a genuine, sustainable investment in completing the requirements of the case plan and following the orders of the court in order to authorize a plan to return or be placed in the home as the permanency goal." Ark. Code Ann. § 9-27-338(c)(3)(iii). The sixth goal is permanent custodial placement with a "fit and willing relative." [3] Ark. Code Ann. § 9-27-338(c)(6). The burden of proof in a permanency-planning hearing is preponderance of the evidence. Ark. Code Ann. § 9-27-325(h).

In this case, we hold that the circuit court did not clearly err in bypassing the first, second, and third goals and placing permanent custody of T.M. with the McCoys. As to the first and second goal, the evidence showed that Nikki's husband, Vaughn, posed a danger to T.M. and that Nikki's relationship with him was uncertain. Nikki and Vaughn had two altercations between the November and January hearings. Even though Nikki testified that she had separated from Vaughn and planned to file for a divorce, DHS presented testimony that Nikki had a history of returning to the relationship. Moreover, Nikki was arrested during the second altercation for an unresolved warrant, and she had nine months remaining

---

[3] Nikki does not argue on appeal that the court should have applied the fourth or fifth goal. Accordingly, they are not relevant to this appeal.

in the drug-court program. Accordingly, we cannot say that the court clearly erred when it refused to return T.M. to Nikki's custody at the permanency-planning hearing.

For similar reasons, we cannot say that the court clearly erred in finding that Nikki was not making significant and measurable progress as to allow T.M. to be returned within three months pursuant to goal three. T.M. was removed from Nikki's custody as a result of her drug use and her criminal charges. In the probable-cause order, the court also found that T.M. had been exposed to domestic violence in the home and ordered Nikki to demonstrate the ability to protect the child and keep her safe from harm. As discussed above, the evidence at the permanency-planning hearing showed that Nikki had nine months remaining in the drug-court program, had two recent altercations with Vaughn, and had been arrested for an unresolved warrant. The second altercation and the arrest for the unresolved warrant occurred just weeks before the second hearing. We note that the permanency-planning statute requires the court to select a goal based on the best interest, health, and safety of the juvenile, *see* Ark. Code Ann. § 9-27-338(c), and T.M.'s counselor had concerns about T.M.'s living with Vaughn and recommended that the court place T.M. "in the safest place possible with consistency." Accordingly, giving due deference to the circuit court's superior position to assess credibility, we hold that the circuit court did not clearly err in not applying goal three.

Affirmed.

HARRISON and KINARD, JJ., agree.

*Tabitha McNulty*, Arkansas Public Defender Commission, for appellant.
*Andrew Firth*, Office of Chief Counsel, for appellee.
*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor child.