Cite as 2019 Ark. App. 337

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV–19–45

|  |  |
|---|---|
| STEPHANIE YELVINGTON<br><br><div align="right">APPELLANT</div><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br><br><div align="right">APPELLEES</div> | **Opinion Delivered:** June 5, 2019<br><br>APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT<br>[NO. 72JV-18-263]<br><br>HONORABLE STACEY ZIMMERMAN, JUDGE<br><br>AFFIRMED |

## MIKE MURPHY, Judge

Stephanie Yelvington appeals from the order of the Washington County Circuit Court terminating her parental rights to her son, CY. She also appeals the permanency-planning order changing the goal of the case to termination of parental rights and adoption. On appeal, she argues that it was error to change the goal of the case to termination and adoption because she was demonstrating sustainable investment in the case plan and was making measurable progress. She also argues that termination of her parental rights was not in CY's best interest. We affirm.

On March 13, 2018, the Arkansas Department of Human Services (DHS) received a call on the child-abuse hotline that six-year-old CY had been sexually abused by his father, John Rogers. The call was made by CY's mother from the child's school because CY disclosed the abuse to school staff, and the staff gave the mother the option to call, or they would. Yelvington admitted CY had already told her about being raped by his father, but

she had told CY not to tell anyone. DHS investigated, and Yelvington said CY had told her "his daddy had . . . made him get on his hands and knees, pulled his pants down, and stuck his 'mhm' in his butt." Yelvington knew that Rogers had a true finding against him for sexually abusing two other children. There had been a protection plan in place, signed by both Yelvington and Rogers, that provided that CY would not be allowed to have unsupervised contact with Rogers.

On March 15, 2018, DHS exercised a seventy-two-hour hold on CY based on suspected sexual abuse and Yelvington's failure to protect. The case proceeded through emergency, probable-cause, and adjudication hearings. CY was adjudicated dependent-neglected due to sexual abuse, neglect, and parental unfitness. Specifically, the circuit court found that the allegations in the petition were true and correct and that "the evidence is horrific, clear and convincing that John Rogers anally raped [CY]. Stephanie Yelvington failed to protect [CY] from the sexual abuse by John Rogers." The circuit court further found that

> Yelvington knew of the dangers John Rogers posed but violated the safety plan. . . . [CY] told Mother at least twice but Mother did nothing to stop the abuse and did not call the police. The Court today finds that Stephanie . . . subjected [CY] to sexual abuse including, aggravated circumstances under A.C.A. § 9-27-341, for sexual abuse.

The goal of the case was set as reunification with a concurrent goal of adoption. Yelvington was ordered to follow the case plan and court orders and demonstrate the ability to protect the juvenile and keep him safe from harm. The next hearing was set as a permanency-planning hearing.

On June 21, 2018, the circuit court held a permanency-planning hearing. At that hearing, the court heard from Katie Cuff, CY's therapist. She testified that CY is progressing

2

in therapy, has reduced anxiety, and is developing greater self-esteem in therapy. Rosalinda Medrano, CY's caseworker, testified next. She testified that the family has a history with DHS because CY was previously malnourished due to severe food allergies and an avoidant/restrictive food-intake disorder. She said that he is thriving since coming into foster care. Medrano stated that Yelvington is cooperative and completing all her services. She testified that Yelvington was diagnosed with an intellectual-development disorder and that the psychological evaluation provided that it is "unlikely that Ms. Yelvington will be able to manage CY on her own as he grows and develops." The report further provided that Yelvington is "easily overwhelmed" and "relies on others to take care of her." Medrano testified that considering all of CY's needs (allergies, nutritional, psychological) and Yelvington's psychological report, CY could not be safely returned to Yelvington's home and that the case goal should be changed to adoption. Medrano acknowledged that Yelvington is making progress but that the case is complicated considering all of CY's needs.

Also at this hearing, the circuit court heard testimony about possibly placing CY with Yelvington's stepsister, Cindy Adler. Adler worked for DHS, but the court found it was not in CY's interest to place him with Adler at the time because Adler did not have a significant relationship with the child and because Adler "pulled some strings" at DHS to get CY's case "restricted"—which restricted Medrano's access to CY and his crimes-against-children-investigation interviews and information—and which the court found was to CY's detriment. The goal of the case was changed to authorizing a plan for adoption and termination of parental rights.

On August 30, 2018, DHS filed a petition for termination of parental rights, alleging the grounds of sexual abuse, Ark. Code Ann. § 9-27-341(b)(3)(B)(vi)*(a)* (Supp. 2017), and

aggravated circumstances, Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)(B)*. On October 3, the circuit court held a termination-of-parental-rights hearing.

At the beginning of the hearing, the court denied motions for reconsideration and 54(b) certification from the permanency-planning order. Adler's second motion for intervention was likewise denied. Next, it heard testimony from Cuff, who testified that CY was continuing to improve in therapy. It then heard testimony from Medrano. Medrano testified that Yelvington was following the case plan but that DHS was still concerned that Yelvington was unable to keep CY safe. She explained that the hold from the failure to protect and sexual abuse actually took place while there was an open protective-services case on CY for his malnutrition with Yelvington being the offender. Medrano testified that even before removal, Yelvington was having trouble managing CY's allergies, taking him to appointments, and managing his nutritional needs. She testified that CY was thriving in his foster placement and doing well in school.

Yelvington testified that she was going to counseling, taking lessons on nutrition, and had even made flash cards about what foods and drinks CY can have. She testified that after she had learned about the sexual-abuse findings against Rogers, she still let him come around and visit CY but that she "know[s] how to keep him safe now." Yelvington explained that the sexual abuse of CY happened at her mother's house, and it was her mother who had left CY unsupervised. She further explained that she told CY not to tell anyone when he told her about the abuse.

CY's foster mother testified that he has improved tremendously in her care. He is trying new foods, he is not having any breakouts, and he is getting good grades. She said that he is bonded with the other children in the home and that she is interested in adopting

4

CY. The CASA volunteer recommended termination of Yelvington's parental rights. At the conclusion of the hearing, the circuit court terminated Yelvington's parental rights on both grounds alleged. It also found that termination was in CY's best interest.

Yelvington appeals, arguing that it was error to change the goal of the case to termination of parental rights and adoption and that termination was not in CY's best interest, especially considering that there was an appropriate relative placement available.

Termination-of-parental-rights cases are reviewed de novo. *Denen v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 473, at 1, 527 S.W.3d 772, 773. "A circuit court's order that terminates parental rights must be based on clear and convincing evidence." *Burleson v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 616, at 7, 535 S.W.3d 655, 659. Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction that the allegation has been established. *Id*. Proof of only one statutory ground is sufficient to terminate parental rights. *Id*. An order terminating parental rights must be based on a finding that termination is in the child's best interest, which includes consideration of the likelihood that the juvenile will be adopted and the potential harm caused by returning custody of the child to the parent. *Vasquez v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 575, at 5, 337 S.W.3d 552, 556.

## I. *Best Interest*

First, Yelvington argues that terminating her parental rights was not in CY's best interest. In opposing the circuit court's best-interest finding, Yelvington challenges only the potential-harm factor of the best-interest analysis. She therefore abandoned any other arguments against the circuit court's best-interest finding. *See, e.g.*, *Anderson v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 522, at 5, 385 S.W.3d 367, 370.

First, Yelvington's failure to demonstrate the ability to protect CY and keep him safe supported the circuit court's assessment of potential harm. *Bowman v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 477, at 3 (A parent's "failure to protect provide[s] a basis for finding that the children would be subject to potential harm if returned to the parents."). Undisputedly, Yelvington had a true finding for failure to protect CY from sexual abuse. Moreover, at the adjudication hearing, the circuit court found that Yelvington had "violated the protection plan," "failed to protect [CY] from the sexual abuse" by his father, and therefore "subjected [CY] to sexual abuse including, aggravated circumstances." These findings were not appealed and are thus considered established on appeal.

Arkansas appellate courts have repeatedly held that a parent's past behavior is an indicator of likely potential harm should the child be returned to the parent's care and custody. *Parnell v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 108, at 17, 538 S.W.3d 264, 275. Here, Yelvington's past behavior revealed that she not only failed to protect CY from his father—whom she knew had received two true findings for sexually abusing children— but she also failed to alert either the police or DHS once she learned her child had been raped. In fact, after CY had disclosed the abuse to her, Yelvington failed to do anything or take any protective actions such as seeking medical attention for CY or counseling to help her young son deal with the trauma of sexual abuse. Instead, she instructed CY not to tell anyone about the abuse.

Termination of parental rights is an extreme remedy and is in derogation of the natural rights of the parents. *Sowell v. Ark. Dep't of Human Servs.*, 96 Ark. App. 325, 327, 241 S.W.3d 767, 768 (2006). However, parental rights should not be allowed to continue to the detriment of the child's welfare and best interest. *Id.* Here, the evidence establishes

that Yelvington could not meet CY's needs and protect him from harm. It was not error for the circuit court to conclude that there would be potential harm to CY if returned to Yelvington's custody, based on her past behavior, and we affirm this point.

II. *Change of Goal to Termination and Adoption*

The burden of proof in a permanency-planning hearing is preponderance of the evidence. *Lansdell v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 433, at 8, 502 S.W.3d 579, 583. The standard of review on appeal is de novo, and we will reverse only if the circuit court's findings are clearly erroneous. *Bean v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 77, at 6, 513 S.W.3d 859, 865. The permanency-planning statute requires the court to select a goal based on the best interest, health, and safety of the juvenile. *Lansdell*, 2016 Ark. App. 433, at 9, 502 S.W.3d at 584. The burden is on the parent to demonstrate genuine, sustainable investment in completing the requirements of the case plan and following the orders of the court in order to retain reunification as the permanency goal. *Id.* at 8, 502 S.W.3d at 583.

On appeal, Yelvington argues that she satisfied her burden of demonstrating a genuine, sustainable investment in completing her requirement to authorize a plan for CY to return home and that she made significant, measurable progress toward remedying the conditions that caused removal. She points to how she attended parenting classes, attended counseling, obtained a no-contact order against Rogers, and learned about CY's health conditions and needs. Yelvington, however, asks us to reweigh the evidence. It is well settled that we will not reweigh the evidence on appeal, and credibility determinations are left to the circuit court. *Blasingame v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 71, 542 S.W.3d 873. Here, the circuit court had evidence before it that while Yelvington was

making some progress, she suffered from an intellectual disability and was not going to be able to meet CY's extensive needs.

Finally, Yelvington argues that it was error for the circuit court to not consider relative placement as a part of maintaining the goal of reunification in light of the testimony that her stepsister, Adler, was willing to assist Yelvington and CY in any way she could. However, the circuit court specifically found it was not in CY's best interest to place CY with Adler because Adler had restricted CY's caseworker from accessing CY's crimes-against-children-investigation information, Adler did not have a developed relationship with CY, and CY was thriving in his current placement and moving him would be detrimental to his current well-being. These findings are supported by the evidence, and the circuit court did not clearly err in declining to place CY with Adler.

Affirmed.

VIRDEN and BROWN, JJ., agree.

*Dusti Standridge*, for appellant.

*Callie Corbyn*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor child.