Cite as 2025 Ark. App. 507

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CV-25-265

| | |
|---|---|
| PATRICIA WILLIAMS | Opinion Delivered October 29, 2025 |
| APPELLANT | |
| | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT |
| V. | [NO. 72JV-23-331] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD | HONORABLE DIANE WARREN, JUDGE |
| APPELLEES | AFFIRMED |

## RAYMOND R. ABRAMSON, Judge

Patricia Williams appeals from the order of the Washington County Circuit Court that (1) changed the goal of her dependency-neglect case to guardianship, and (2) awarded a guardianship over MC to Melissa and Clint Garrett (the Garretts), Williams' sister and brother-in-law. Specifically, Williams argues on appeal that (1) it was against the preponderance of the evidence to change the Arkansas Department of Human Services' (DHS) goal from reunification to guardianship; and (2) it was erroneous to grant the Garretts a guardianship over MC because Williams was fit to parent MC. We affirm.

## I. *Background*

On May 5, 2023, the Arkansas Department of Human Services (DHS) received a tip regarding educational and environmental neglect of MC, who was ten years old at the time. When the tip came in, MC and Patricia Williams, MC's biological mother, were staying at a

hotel after being evicted from their apartment. This was roughly the tenth[1] referral made to DHS regarding MC. Prior referrals that were found substantiated involved failure to provide food, clothing, shelter, essentials, and medical treatment; educational neglect; sexual contact and penetration; and inadequate supervision. Williams and MC had an ongoing family-in-need-of-services (FINS) case.

On May 18, 2023, MC was present for an adjudication hearing in the FINS case. The circuit court found that MC and Williams had been evicted from their residence and were currently living in a motel. The only source of income for the family was Williams's roughly $900 monthly SSI check. Williams also was eligible for SNAP benefits but failed to utilize them. Additionally, MC had missed at least forty-eight days of school since February 22, 2023, and had not attended any classes since May 9, 2023, which resulted in MC's absence nearly 70 percent of the time. The court found that Williams was disabled, was not working, and suffered from a myriad of untreated physical and mental-health issues. Accordingly, the circuit court held that Williams was unable to provide the basic needs for MC, including clothing, food, shelter, and education. An ex parte order for emergency custody was entered on May 22, 2023.

On June 23, the court entered a probable-cause order. In the order, the circuit court found that Williams was still in no position to care for MC, so probable cause continued to

---

[1]Two of the prior referrals were unsubstantiated.

exist to keep MC with her maternal aunt. Williams was granted at least four hours of supervised visitation a week.

On August 23, 2023, the court entered an adjudication and disposition order that set the goal as reunification and approved the DHS-developed case plan. Supervised visitation was again approved for four hours a week. A September 22 review order maintained the goal of reunification but noted that Williams was now living at the Salvation Army. Further, the circuit court noted that Williams was not compliant with the case plan and orders of the court and that "[v]isits have been difficult to arrange between mother and the juvenile because of a lack of good contact information for the mother."

On April 2, 2024, the circuit court held a permanency-planning hearing in accordance with Ark. Code Ann. § 9-27-338 (Supp. 2023), as was applicable at the time of the hearing.[2] The circuit court held that Williams still had not made "significant and measurable progress" toward the goal of reunification, and reunification was no longer the appropriate permanency goal. At the hearing, Williams testified that she was now in an apartment but admitted that she had yet to pay any rent—it was being covered by Supportive Services for Veteran Families (SSVF), and it would help her for only two years. When asked what she would do when the two years were over and she could not afford the rent on her own, she answered that she and MC would move somewhere more affordable. Williams

---

[2]On August 5, 2025, section 9-27-338 was replaced by Ark. Code Ann. § 9-35-324. No changes were made that would affect this case.

3

further testified that MC missed so much school because MC was often sick due to black mold in the old apartment and a myriad of spider bites.

Williams testified that she had been in counseling for about a month and a half but was unable to provide any records from her counselor. She also attested that she does not have a vehicle and must be transported by DHS to have her supervised visits with MC. She stated that if MC were returned to her, she would use Lyft, Uber, or other public transportation. Williams acknowledged that she had yet to complete the psychological evaluation required by the case plan and had yet to attend the required parenting classes.[3] Williams testified that she had been diagnosed with PTSD, anxiety, hip impingement, scoliosis, and fractures in her spine. She further testified she was not taking any mental-health medication. Finally, Williams conceded that MC is happy in her current placement with MC's maternal aunt and uncle-in-law.

At the close of all testimony and argument, the circuit court held that while steps had been taken by Williams, they were not sufficient to be considered "significant measurable progress." Specifically, the circuit court noted that Williams had not yet paid rent on her new apartment, she did not have any transportation, and she stated she was getting counseling but did not provide any records or letters from her counselor discussing whether

---

[3]The circuit court noted that there was a turnover with the DHS caseworker, and it was possible that Williams had not yet received the referrals for the psychological evaluation and parenting classes.

4

her mental health would impede her care of MC. Accordingly, the circuit court amended the goal from reunification to guardianship with a concurrent goal of adoption.

The guardianship hearing was held February 11, 2025. At the hearing, Melissa Garrett testified that MC had resided with her and her husband for almost two years and was doing very well. She further testified that she must drop off and pick up MC from any visits with Williams. Additionally, Melissa noted that there had been at least one occasion when MC was not ready for pickup because Williams had taken her medicine and fallen asleep. Carrington Friddle, the current DHS caseworker, testified that she continued to have concerns about Williams's ability to provide stability for MC and that she had been unable to obtain any of Williams's counseling records despite multiple attempts.

MC testified that the Garretts treated her exactly as they should and that they were very nice and made sure she had everything she needed. MC stated that if she were sent home with Williams, she had concerns about getting to her doctor's appointments and was somewhat worried about having food with regularity. When asked the main reason she wanted to go back with her mom, MC said she would be able to help clean the house, help her mom get things done, and take care of the three new kittens they had. She testified that she had asked her school about the possibility of getting snack packs to take home if she ends up with her mom, just to be safe.

MC also testified that, during her visits with Williams, they had left the apartment only one time. Moreover, MC testified that she would need to be driven to school on the days she has to take her cello in because she is not allowed to take her cello on the school

bus. MC also testified that part of the reason why she was frequently absent from school when she last lived with her mother was because she did not always have enough clothes for that day—or she would oversleep. Finally, MC informed the circuit court that if she went back with her mom, it would be different because MC would not oversleep anymore, she wouldn't be as sick anymore, and if her mom got her clothing and school supplies, she should be okay.

Williams testified that she has stable housing, and she believes that she is the best person to care for MC because "they have saved each other's lives" and are very close. She admitted that she has not yet signed the consent forms to release her counseling records because she has not been able to get there to do it and has been completing her counseling over Zoom. Williams then testified that she has consistently attended counseling, is now receiving antianxiety medication, and her mental health is stable. Finally, Williams alleged that she is the only person who really cares about MC's health and welfare.

At the close of the testimony, the circuit court granted the Garretts guardianship over MC. In its holding, the circuit court reiterated the history of this case dating from 2023 and the help that DHS had been providing since 2019. The circuit court noted that Williams was ordered to follow the requirements of the case plan. Specifically, Williams was to obtain stable housing, employment, and finances sufficient to meet MC's basic needs. Williams had been ordered to create a transportation plan to get MC to the places she needed to go, including school and medical appointments. The circuit court further recounted that at *no point* in this case had it ever determined that Williams had made sufficient progress. And

although the court acknowledged she has made some progress recently, it felt that this progress was not sufficient to determine that Williams could meet MC's needs on a consistent basis. This appeal followed.

## II. *Standard of Review*

The burden of proof in a permanency-planning hearing is preponderance of the evidence. *Yelvington v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 337, 580 S.W.3d 874. The standard of review on appeal is de novo, and we will reverse only if the circuit court's findings are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Dinkins v. Ark. Dep't of Hum. Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). It is well settled that credibility determinations are left to the circuit court. *Thompson v. Ark. Dep't of Hum. Servs.*, 2025 Ark. App. 80, at 13–14, 707 S.W.3d 483, 492.

Arkansas Code Annotated section 28-65-210 (Repl. 2012)[4] provides that before appointing a guardian, the court must be satisfied that (1) the person for whom a guardian is prayed is either a minor or otherwise incapacitated; (2) a guardianship is desirable to protect the interests of the incapacitated person; and (3) the person to be appointed guardian is qualified and suitable to act as such. When the incapacitated person is a minor, the key

---

[4]This statute was also replaced by the current version under Act 713 of 2025, § 17. It is identical to the current statute.

factor in determining guardianship is the best interest of the child. *Flowers v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 229, at 6, 666 S.W.3d 128, 131.

### III. *Discussion*

On appeal, Williams makes two arguments. First, she argues that the circuit court erred in changing the goal from reunification to guardianship. Second, Williams argues that the circuit court erred in granting the Garretts guardianship over MC. Both arguments fail.

### A. Goal of Guardianship

Williams contends that the circuit court erred at the permanency-planning stage when it changed the goal of the case from reunification with a concurrent goal of relative placement to a goal of guardianship with a concurrent goal of adoption. Specifically, Williams alleges that the change of goal was against the preponderance of the evidence and was contrary to the statute.

The circuit court did not clearly err in changing the goals in this case. Williams had more than a year to come into compliance, but she did not begin counseling until a month before the permanency-planning hearing. She testified that she began counseling in March 2024, and the hearing was on April 2, 2024. Moreover, Williams had been in her apartment for only a couple of months and had yet to make *any* rent payments. She presented no evidence that her mental-health problems were under control, and she failed to complete the psychological exam or take part in parenting classes as required by the case plan. The circuit court acknowledged that Williams may not have received the referrals for the psychological

exam and the parenting classes but also noted that these had been a requirement of the case plan from the beginning and were certainly not a surprise to Williams.

Additionally, while Williams had been enjoying regular supervised visits with MC, she had to be transported to all her visits by DHS. Williams had made only the most minimal progress on the case plan toward the goal of reunification. The burden was on Williams to demonstrate that she was invested in completing the requirements of the case plan to maintain a goal of reunification. *Yelvington*, 2019 Ark. App. 337, at 8, 580 S.W.3d at 879. As DHS notes, for eight of the twelve months leading up to the permanency-planning hearing, Williams was either living in a motel or at the Salvation Army, neither of which is stable housing.

### B. Guardianship of MC

Williams further argues that a guardianship was not necessary to protect MC because there was a "less restrictive alternative" to guardianship—placement with her. She argues that by the time of the guardianship hearing she had rectified all the concerns of DHS.

Arkansas Code Annotated section 28-65-210 states that before granting a guardianship petition, the court must find the following by clear and convincing evidence: (1) The proposed ward is either a minor or otherwise incapacitated; (2) A guardianship is necessary to protect the interests of the proposed ward; and (3) The person to be appointed guardian is qualified and suitable to act as such. When the incapacitated person is a minor, the key factor in determining guardianship is the best interest of the child. *Fletcher v. Scorza*, 2010 Ark. 64, 359 S.W.3d 413. The parties do not dispute that MC is an incapacitated

9

person due to her age. The parties also do not question that the Garretts would be suitable guardians. Accordingly, the issue before this court is whether a guardianship was in MC's best interest.

First, Williams notes that she had a stable home for over a year and had a plan if the current housing became unsustainable. Williams takes specific issue with the circuit court's reliance on her future stability; however, Williams herself put the future into issue. At the time of the guardianship hearing, Williams was unable to afford her apartment without help. She had testified in a previous hearing that the aid she was receiving lasted only two years, and without this aid she would be unable to afford her current apartment on her SSI benefits, which were about $900 a month. Williams further testified that her "plan" if she lost her aid would be to find less expensive housing. She did not expand on how she would find this housing or what other aid she would seek.

Second, Williams argues that her disability and receipt of SSI benefits should not be held against her. However, Williams fails to cite anything in the circuit court's order that penalizes Williams for receiving SSI. In fact, the circuit court explicitly stated at the April 2, 2024 hearing: "And the job I don't hold against her. She is disabled and has got a disability income. She's maintained that throughout." The circuit court did question whether the SSI income would be sufficient to care for MC; however, the circuit court did not deem Williams unfit on this factor alone. Contrary to Williams's assertion, *Strickland v. Arkansas Department of Human Services*, 103 Ark. App. 193, 200, 287 S.W.3d 633, 639 (2008), is not analogous to the instant situation. In *Strickland*, this court determined whether the evidence supported

10

the *termination* of the mother's parental rights. *Id.* The standard in in a termination-of-parental-rights case is clear and convincing, which is a higher bar than the applicable standard here. *Yelvington*, 2019 Ark. App. 337, 580 S.W.3d 874.

Finally, Williams argues that the fact that the court authorized extended unsupervised visitation supports a finding that she is fit. As support, Williams contends that absent a finding that she was unfit, the natural-parent preference prevails. However, our supreme court rejected this argument in *Fletcher*, 2010 Ark. 64, at 12, 359 S.W.3d at 420–21:

> However, as already noted, section 28-65-204(a) provides a natural-parent preference if the natural parent is qualified, and in the opinion of the court, suitable. The statute makes no mention of whether the natural parent is "fit" or "unfit," as those terms have been used in custody cases. Moreover, we have previously attempted to distinguish guardianship cases from custody cases:
>
> > The natural-parent preference referred to by appellant derives from our long-established caselaw in custody matters and from Ark. Code Ann. § 28-65-204(a). While the two preferences are similar, the preference at issue here is the statutory preference, Ark. Code Ann. § 28-65-204(a).
>
> *Freeman* [*v. Rushton*, 360 Ark. 445, 449, 202 S.W.3d 485, 487 (2005)]. In *Freeman*, we rejected Freeman's argument that "the natural-parent preference must prevail unless it is established that the natural parent is unfit," observing that "[*Stamps v. Rawlins*, 297 Ark. 370, 761 S.W.2d 933 (1988), relied on by Freeman,] is a modification-of-custody case, not a guardianship case, governed by the case-law preference, not the statutory preference found in Ark. Code Ann. § 28-65-204(a).

*Id.* (some internal citations omitted). Accordingly, Williams's reliance on whether she is fit is misplaced in the instant case.

Moreover, Williams does not discuss her failure to obtain a psychological evaluation or attend the required parenting classes. She also failed to provide any of her counseling

11

records to DHS to determine whether she had the mental stability to provide for MC. When the emergency removal was granted, the circuit court noted that Williams had such severe mental-health issues that she was nearly impossible to understand. As the record shows, the family had been involved with DHS since at least 2019. This was not a one-time issue. At the time of the guardianship hearing, Williams still had not created a stable transportation plan to get MC where she needed to go. There was further evidence that Williams had recently adopted three new kittens, even though uncontrolled cat feces and litter were, in part, what led to her initial eviction at the beginning of the case. Furthermore, MC testified that she still was concerned about having enough food if she was returned to Williams's care. She had already asked to get snack packs to bring home from school in case they did not have enough food.

Finally, one of the main issues of the case was MC's abysmal school attendance. Other than stating that MC could take the bus, Williams did not elaborate on what steps she had taken to make sure that MC would be able to get to school every day. There was at least one occasion when Williams's medication made her so tired that MC was not ready for pickup; there was nothing in the record to suggest that this would not occur again when it was time for MC to attend school. Moreover, MC testified that she wanted to go back with Williams to take care of Williams when Williams's healthcare aides were not present and to help take care of the three new kittens, which is essentially the same situation that initially led to MC's removal.

IV. *Conclusion*

In cases involving children, we afford even more deference to the circuit court's findings because, as our appellate courts have made clear, there is no other case in which the superior position, ability, and opportunity of the circuit court to observe the parties carries a greater weight than one involving the custody of a child. *Galli v. Jones*, 2021 Ark. App. 302, 627 S.W.3d 434; *Sherland v. Sherland*, 2015 Ark. App. 342, 465 S.W.3d 3. Given these circumstances, we are not left with a definite and firm conviction that the court made a mistake by finding that the goal should change to guardianship with a concurrent goal of adoption and that it was in MC's best interest to appoint the Garretts as her guardians.

Affirmed.

VIRDEN and TUCKER, JJ., agree.

*Jennifer Oyler Olson*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor child.